## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ANGELA MUNSELL, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

COLGATE-PALMOLIVE CO., and TOM'S
OF MAINE INC.

      Defendants.

C.A. No.

## CLASS ACTION COMPLAINT

Plaintiff Angela Munsell ("Plaintiff'), by and through her undersigned counsel, as and for her Complaint against Defendants Colgate-Palmolive Co. ("Colgate") and Tom's of Maine Inc. ("Tom's" or "Tom's of Maine") (collectively "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a class action brought by Plaintiff on behalf of herself and all other individuals who purchased toothpaste and deodorant products in Massachusetts and Rhode Island sold by Defendants under the Tom's of Maine brand (herein "the Products") which deceptively, falsely and misleadingly represent that such products are "natural" when the Products actually contain artificial, synthetic and/or chemically processed ingredients. A list of the Products is attached hereto as Exhibit 1.

2.      In marketing the Products, Defendants target consumers whose purchasing decisions are driven by health and environmental concerns.  Defendants deliberately market the Products as being "natural" because it allows them to sell the Products at a price premium over products that are

not represented as natural. Defendants know that consumers will choose the Products over competing products because the Products are represented as "natural".

3.      While Defendants sell the Products under the Tom's of Maine brand and market them as being "natural", the Products are not in fact "natural." The reality is that the Products contain a host of artificial, synthetic and/or chemically processed ingredients including but not limited to Glycerin, Propylene Glycol, Sodium Lauryl Sulfate, Aluminum Cholorohydrate, Xantham Gum, Sorbitol, Ascorbic Acid and Xylitol.

4.      For years, Defendants have been deceiving and misleading their customers, including Plaintiff and the members of the Classes (as defined below), by mislabeling and misrepresenting their Products as "natural" despite knowing otherwise. They have done so to convince consumers that Tom's of Maine Products are better than competing products and to induce the purchase of the Products at a price premium associated with "natural" products.

5.      As a direct and proximate result of Defendants' actions, Plaintiff and members of the Classes purchased Tom's of Maine Products at a price premium. Because of Defendants' actions, Plaintiff and the Classes have been harmed because they overpaid for the Products and received products that contained artificial, synthetic and/or chemically processed ingredients that rendered them not "natural," contrary to Defendants' representations.

6.      Defendants' conduct alleged herein constitutes unfair and deceptive acts and practices in the conduct of trade and commerce in violation of M.G.L. c. 93A and R.I. G.L. §6-13.1-1 *et seq.*

7.      As a result of Defendants' unlawful conduct, Plaintiff seeks the greater of statutory damages or recessionary damages for the Tom's of Maine Products that she and the members of the Classes purchased from Defendants, along with any and all equitable, injunctive or further relief as provided by applicable law or as ordered by the Court.

2

## PARTIES

8.      Plaintiff resided in Taunton, Massachusetts until the spring of 2016. Since the spring of 2016, she has resided in Pawtucket, Rhode Island. Since at least the end of 2015, Plaintiff has regularly purchased Tom's of Maine brand toothpaste marketed as "natural," including without limitation the Cinnamon Clove toothpaste and the Sweet Mint whitening toothpaste as well as Tom's of Maine deodorant marketed as "natural." Plaintiff purchased these Tom's of Maine Products from stores in both Massachusetts and Rhode Island, including Target, Walmart and Whole Foods. Plaintiff purchased these Products because she specifically wanted natural toothpaste and deodorant products. When purchasing the Tom's of Maine Products Plaintiff paid a price premium over and above the price for similar toothpaste and deodorant that did not claim to be "natural."

9.      Defendant Colgate is a Delaware corporation with its principal place of business at 300 Park Avenue, New York, New York 10022. Colgate is in the business of manufacturing, marketing and selling a wide array of oral, personal and home care products including toothpaste and deodorant, throughout the United States, including in Massachusetts and Rhode Island.

10.      Defendant Tom's is a subsidiary of Colgate.  In 2006, Colgate conducted an all cash acquisition of an 84% stake in Tom's for approximately $100 million. Tom's maintains its principal place of business in Kennebunk, Maine.  In conjunction with Colgate, Tom's markets, labels, brands and sells personal care products such as deodorant and toothpaste as "natural" under the Tom's of Maine brand throughout the United States including in Massachusetts and Rhode Island.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action that seeks certification of classes of consumers; the Classes consist of more than

one hundred proposed class members; the citizenship of at least one class member is different from Defendants' citizenship; and the aggregate amount in controversy of the claims of Plaintiff and the putative Classes exceeds $5,000,000, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because many of the actions giving rise to the claims at issue took place in this District and Defendants regularly conduct business in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District, and the claims at issue arise from actions by Defendants causing injury to consumers in this District.

## FACTUAL ALLEGATIONS

### The Market for Natural Products

14.     There is a large and growing worldwide market for personal care products that are (or are perceived to be) safer and more environmentally friendly than traditional mainstream personal care products.

15.     Whether products are in fact "natural" and whether they contain artificial, synthetic and/or chemically processed ingredients is important to a reasonable consumer.  In fact, consumers often pay a substantial premium to purchase personal care products that are represented to be "natural".

16.     Merriam-Webster's Dictionary defines "natural" as "existing in or produced by nature: not artificial".[1]

17.     In March, 2006, when Colgate acquired Tom's of Maine, the press release issued on Tom's of Maine's website noted that the "U.S. Market for Natural oral and personal care products is

---

[1] https://www.merriam-webster.com/dictionary/natural.

valued at $3 billion and is growing at 15 percent per year."[2]  The release also highlighted that Tom's of Maine toothpaste was the "clear market leader commanding 60% share of that channel."  The release acknowledged that Colgate had acquired Tom's of Maine specifically to benefit from this sector of the personal care market.

18.     According to a 2016 Wall Street Journal article, "U.S. sales of beauty, household and personal care products that make natural claims have grown 35% since 2012, versus 4% growth for the broader industry."[3]

19.     A 2019 report indicates that the global organic and natural personal care market is expected to continue its large growth and that North America accounts for over 35% of the global market for organic and natural personal care products, driven in large part by consumers' desire to avoid artificial, synthetic or chemically formulated products.[4] The article states that companies in the natural personal care market "are using 'Fear-based product marketing' as a strategy for promoting their organic product line to the customer. Consumers give into this strategy as a consequence of a strong perception about the long-term effects of chemical or synthetic personal care items, due to which they choose organic over synthetic. As a consequence, this trend has been favoring the organic and natural personal care market demand in the last couple of years."

---

[2] https://www.tomsofmaine.com/news/colgate-purchasing-toms-of-maine.
[3] https://www.wsj.com/articles/natural-product-claims-can-be-murky-1459296027 (citing Bernstein Research analysis of Neilsen data).
[4]      https://www.globenewswire.com/news-release/2019/04/23/1807675/0/en/Organic-and-Natural-Personal-Care-Market-will-grow-at-a-CAGR-of-8-during-forecast-period-2018-2025-Global-Analysis-by-Trends-Size-Share-Business-Opportunities-and-Key-Developments-.html.

**Defendants Prominently Marketed and Labeled Tom's of Maine Products as "Natural" Despite the Fact that they Contain Artificial, Synthetic and/or Chemically Processed Ingredients**

20.     For years, Defendants have sought to capitalize on the profitable market for "natural" products by marketing and selling Tom's of Maine Products as "natural," in an effort to differentiate those Products from other products.

21.     The Tom's of Maine Products prominently display the "natural" claim on the labels.

22.     Defendants have marketed and sold their Products as "natural", despite the fact that they contain ingredients that are artificial, synthetic and/or chemically processed. Defendants have done so in order to sell their Products to consumers, like Plaintiff, who are looking to purchase "natural" products that are safe and environmentally friendly. Defendants know that consumers will pay a price premium for "natural" products and accordingly sell their Products as "natural" with the corresponding price premium above other comparable products that are not marketed as natural.

23.     Defendants have spent millions of dollars over the years marketing the Tom's of Maine Products as "natural," not only through labeling and packaging, but also in print and television advertisements, internet advertisements and social media. In fact, as recently as September 26 of this year, Tom's of Maine posted the following on its Instagram account, which has over 20,000 followers:



24.     Below are examples of Tom's of Maine toothpaste packaging and labeling that deceptively, falsely and misleadingly represent that such products are "natural".







25.     Similarly, below are examples of Tom's of Maine deodorant packaging and labels that deceptively, falsely and misleadingly represent that such products are "natural".



26.     It is through this widespread marketing strategy over the years that Defendants have convinced customers that Tom's of Maine Products are "natural" and that Tom's of Maine is a company that is trustworthy, socially responsible and responsive to the health, safety and environmental concerns of its customers.

27.     While the Tom's of Maine Products are labeled and marketed as "natural", Tom's of Maine toothpaste Products contain artificial, synthetic and/or chemically processed ingredients including but not limited to xylitol, sodium lauryl sulfate, glycerin, xantham gum and sorbitol. Likewise, Tom's of Maine deodorant Products contain artificial, synthetic and/or chemically processed ingredients such as glycerin, glyceryl laurate, propelyne glycol, ascorbic acid, and aluminum chlorohydrate. Exhibit 1 sets forth the artificial, synthetic and/or chemically processed ingredients contained in each of the Products despite the "natural" claim by Defendants on the labels. Because the Products contain artificial, synthetic and/or chemically processed ingredients, the

representations on the packaging and labels of Tom's of Maine Products that they are "natural" are deceptive, false and misleading to consumers.

28.     Defendants falsely, deceptively and misleadingly misrepresented the Products as "natural" while delivering to consumers products that had synthetic, artificial and/or chemically processed ingredients. The "natural" products promised to consumers were substantially more valuable than the Products Defendants actually delivered to consumers.   Accordingly, Plaintiff and the Classes were economically harmed because they paid for products that were inferior to the products that Defendants has represented them to be.

29.     To this day, Defendants continue to market, brand, label and sell Tom's of Maine Products as "natural" despite containing artificial, synthetic and/or chemically processed ingredients.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above. The Massachusetts Class and Rhode Island Class as defined below are referred to herein collectively as the "Classes."

### The Massachusetts Class

31.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 and Massachusetts General Laws Chapter 93A, § 2, 9, on behalf of herself and a class (the "Massachusetts Class") consisting of: All persons who have purchased Tom's of Maine toothpaste or deodorant Products in Massachusetts that were labeled "natural" yet contained artificial, synthetic and/or chemically processed ingredients between December 5, 2015 and the present.   A non-exclusive list of those products is set forth in Exhibit 1 hereto.

32.     Excluded from the Massachusetts Class are Defendants and their employees, any affiliated companies or entities Defendants control, as well as employees and officers of the Court.

33.     Plaintiff reserves the right to amend the definition of the Massachusetts Class.

34.     This action is properly maintainable as a class action.

35.     A large quantity of Tom's of Maine Products have been sold to thousands of Massachusetts consumers at stores throughout the Commonwealth and online, and the members of the Massachusetts Class are so numerous that joinder of all members is impractical.

36.     Common questions of law and fact exist as to all the Massachusetts Class Members and predominate over any questions solely affecting individual Members of the Massachusetts Class. Among the questions of law and fact common to the Massachusetts Class are:

   a.   Whether, where and when Defendants marketed and sold Tom's of Maine Products as "natural" in Massachusetts;

   b.   The manner in which Defendants marketed, branded, labeled and sold the Tom's of Maine Products as "natural" in Massachusetts;

   c.   Whether Defendants' representations of Tom's of Maine Products as "natural" were false, deceptive and misleading;

   d.   Whether a reasonable consumer would be deceived or misled by Defendants' marketing, branding, labeling and selling of Tom's of Maine Products as "natural";

   e.   Whether the representation that a product is "natural" is material to a reasonable consumer;

   f.   Whether Defendants had knowledge that their representations regarding Tom's of Maine Products as "natural" were false, deceptive and misleading;

   g.   Whether Defendant's marketing, branding, labeling and selling of the Tom's of Maine Products as "natural" constituted unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, § 2 and 9;

h.   Whether and the extent to which Plaintiffs and the Massachusetts Class were harmed by Defendants' false, deceptive and misleading marketing of Tom's of Maine Products as "natural";

i.   The proper measure of damages; and

j.   Whether Plaintiff and the Massachusetts Class are entitled to multiple damages.

37.   Plaintiff's claims are typical of the claims of the Massachusetts Class because, like each Massachusetts Class Member, Plaintiff purchased Tom's of Maine Products in Massachusetts that were labeled "natural" but contained artificial, synthetic and/or chemically processed ingredients, entitling them to the same relief.

38.   Plaintiff will fairly and adequately protect the interests of the Massachusetts Class Members and has retained counsel with extensive experience prosecuting consumer class actions, and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff does not have any interest adverse to the Massachusetts Class.

39.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Furthermore, the damage that has been suffered by any individual Massachusetts Class Member is likely not substantial, and the expense and burden of individual litigation would make it impracticable for all Massachusetts Class Members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.   The prosecution of separate actions by Massachusetts Class Members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members which could establish incompatible standards of conduct for Tom's of Maine Products.  In addition, adjudications with respect to individual Massachusetts Class Members could, as a practical matter, be dispositive of the interests of the other Massachusetts Class Members not

parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

41.     The members of the Massachusetts Class are readily identifiable through Tom's of Maine and/or other records, and Plaintiff is a member of the Massachusetts Class.

42.     Defendants have acted on grounds generally applicable to the Massachusetts Class with respect to the matters complained of herein, thereby making appropriate relief sought herein with respect to the Massachusetts Class as a whole.

**The Rhode Island Class**

43.     Plaintiff also brings this action pursuant to Federal Rule Civil Procedure 23 and Rhode Island General Laws § 6-13.1-5.2 on behalf of herself and a class (the "Rhode Island Class") consisting of:  All persons who have purchased Tom's of Maine toothpaste or deodorant Products in Rhode Island that were labeled "natural" yet contained artificial, synthetic and/or highly chemically processed ingredients between December 5, 2015 and the present. A non-exclusive list of those products is set forth in Exhibit 1 hereto.

44.     Excluded from the Rhode Island Class are Defendants and their employees, any affiliated companies or entities Defendants control, as well as employees and officers of the Court.

45.     Plaintiff reserves the right to amend the definition of the Rhode Island Class.

46.     This action is properly maintainable as a class action.

47.     A large quantity of Tom's of Maine Products have been sold to thousands of Rhode Island consumers at stores throughout the State of Rhode Island and online, and the members of the Rhode Island Class are so numerous that joinder of all members is impractical.

48.     Common questions of law and fact exist as to all the Rhode Island Class Members and predominate over any questions solely affecting individual Members of the Rhode Island Class. Among the questions of law and fact common to the Rhode Island Class are:

a. Whether, where and when Defendants marketed and sold Tom's of Maine Products as "natural" in Rhode Island;

b. The manner in which Defendants marketed and sold the Tom's of Maine Products as "natural" in Rhode Island;

c. Whether a reasonable consumer would be deceived or mislead by Defendants' marketing, branding, labeling and selling of Tom's of Maine Products as "natural";

d. Whether Defendant's marketing, branding, labeling and selling of the Tom's of Maine Products as "natural" constituted unfair or deceptive acts or practices in the conduct of trade or commerce in violation of §6-13.1-1 *et seq.*;

e. Whether and the extent to which Plaintiffs and the Rhode Island Class were harmed by Defendants' false, deceptive and misleading marketing of Tom's of Maine Products as "natural";

f. The proper measure of damages; and

g. Whether Plaintiff and the Rhode Island Class are entitled to punitive damages.

49. Plaintiff's claims are typical of the claims of the Rhode Island Class because, like each Rhode Island Class Member, Plaintiff purchased Tom's of Maine Products in Rhode Island that were labeled "natural" but contained artificial, synthetic and/or chemically processed ingredients, entitling them to the same relief.

50. Plaintiff will fairly and adequately protect the interests of the Rhode Island Class Members and has retained counsel with extensive experience prosecuting consumer class actions, and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff does not have any interest adverse to the Rhode Island Class.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Furthermore, the damage that has been suffered by any individual Rhode Island Class Member is likely not substantial, and the expense and burden of individual litigation would make it impracticable for all Rhode Island Class Members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     The prosecution of separate actions by Rhode Island Class Members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members which could establish incompatible standards of conduct for Tom's of Maine Products.  In addition, adjudications with respect to individual Rhode Island Class Members could, as a practical matter, be dispositive of the interests of the other Rhode Island Class Members not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

53.     The members of the Rhode Island Class are readily identifiable through Tom's of Maine and/or other records, and Plaintiff is a member of the Rhode Island Class.

54.     Defendants have acted on grounds generally applicable to the Rhode Island Class with respect to the matters complained of herein, thereby making appropriate relief sought herein with respect to the Rhode Island Class as a whole.

## COUNT I

### (Violation of M.G.L. c. 93A on behalf of Plaintiff and the Massachusetts Class)

55.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

56.     At all relevant times, Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of marketing, selling and causing to be sold Tom's of Maine Products as "natural" within the Commonwealth of Massachusetts.

57.     By conducting the unfair and deceptive marketing and branding efforts described herein, through deceptive, false and misleading labeling and marketing of Tom's of Maine Products as "natural", despite the Products containing artificial, synthetic and/or chemically processed ingredients, Defendants have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, § 2.

58.     Defendants' conduct was objectively deceptive, and had the capacity to deceive reasonable consumers under the circumstances.  The fact that the Products were not "natural" and instead contained artificial, synthetic and/or chemically processed ingredients was a material fact that a reasonable consumer would attach importance at the time of purchase.

59.     By engaging in the conduct described above, Defendants violated as least the following regulations promulgated by the Massachusetts Attorney General pursuant to M.G.L. C. 93A, § 2(c):

a.   940 C.M.R. 3.02(2), which states:

No statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another.

b.   940 C.M.R. 3.05(1), which states:

No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof.

c.  940 C.M.R. 3.16(1)-(2), (4) which make any act or practice a violation of Chapter

93A, Section 2 (and thus Section 9) if:

(1) It is oppressive or otherwise unconscionable in any respect; or

(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . .

(4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2.[5]

d.  940 C.M.R. 6.03(2), which states:

Sellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell.[6]

e.  940 C.M.R. 6.04(1)-(2), which state:

(1) Misleading Representations. It is an unfair or deceptive act for a seller to make any material representation of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading, or if the seller does not have sufficient information upon which a reasonable belief in the truth of the material representation could be based.

(2) Disclosure of Material Representations. It is an unfair or deceptive act for a seller to fail to clearly and conspicuously disclose in any advertisement any material representation, the omission of which would have the tendency or capacity to mislead reasonable buyers or prospective buyers. . . .

60.  The Defendants' violation of the regulations enumerated above constitute violations

of Chapter 93A, Section 2(a) because regulations promulgated by the Massachusetts Attorney

General under Chapter 93A, Section 2(c) provide that any act or practice violates Chapter 93A,

---

[5] Defendants' actions also violate 15 U.S.C. § 45(a)(1), which provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." *See also* 16 C.F.R. § 260.2.

[6] "An unfair or deceptive representation may result not only from direct representations and the reasonable inferences they create, but from the seller's omitting or obscuring a material fact." 940 C.M.R. 6.03(4).

Section 2 if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. 3.16(3).

61.     In addition, violations of federal consumer protection statutes, including Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a)(1), are also violations of Chapter 93A.  *See* 940 C.M.R. 3.16(4); Chapter 93A, § 2(b).

62.     The FTC's Guides For The Use Of Environmental Marketing Claims provide the FTC's interpretation of Section 5 of the FTC Act in the context of environmental marketing and advertising claims:

> Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce.  A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions.  *See* FTC Policy Statement on Deception, 103 FTC 174 (1983). To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys.  Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims.  *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984). In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence. Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results. Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.

16 C.F.R. § 260.2.

63.     The conduct described herein is in clear violation of this guidance from the FTC and thus violates Section 5 of the FTC Act and Chapter 93A.

18

64.     The violations of Chapter 93A by Defendants in connection with their marketing and sale of Tom's of Maine Products as described herein were done willfully, knowingly, and in bad faith.

65.     As a direct and proximate result of Defendants' conduct in connection with the branding, labeling, marketing and selling of Tom's of Maine Products in Massachusetts, Plaintiff and the Massachusetts Class were harmed.

66.     Plaintiff and the other Massachusetts Class Members have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them, and the fact that the product they received (one that contained synthetic, artificial and/or chemically processed ingredients) was less valuable than the product represented to them (a "natural" one). Accordingly, Plaintiff and the other members of the Massachusetts Class were harmed by, and Defendants are liable for, Defendants' actions in violation of Chapter 93A.

67.     On November 4, 2019, Plaintiff sent Defendants a written demand for relief pursuant to Chapter 93A, Section 9, identifying the claims Plaintiff asserts on her own behalf and the Massachusetts Class, and reasonably describing the unfair acts or practices relied upon and the injuries suffered. Defendants did not include a reasonable offer of relief to Plaintiff and the Massachusetts Class.

68.     As a result of the conduct described herein, Defendants violated Chapter 93A and are liable to Plaintiff and the Massachusetts Class for up to three times the damages that Plaintiff and the Massachusetts Class incurred, or at the very least the statutory minimum award of $25 for each  purchase of Tom's of Maine Products, whichever is greater, together with all related court costs, attorneys' fees, and interest.

## COUNT II

**(Violation of Rhode Island G.L. § 6-13.1-1 *et seq.* on behalf of Plaintiff and the Rhode Island Class)**

69.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

70.     At all relevant times, Defendants were engaged in trade or commerce within the State of Rhode Island, including the trade or commerce of marketing, selling and causing to be sold Tom's of Maine Products as "natural" within the State of Rhode Island.

71.     By conducting the unfair and deceptive marketing and branding efforts described herein, through deceptive, false and misleading labeling and marketing of Tom's of Maine Products as "natural", despite the Products containing artificial, synthetic and/or chemically processed ingredients, Defendants have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Rhode Island G.L. § 6-13.1-2 *et seq.*

72.     As set forth in Rhode Island G.L. § 6-13.1-1, a defendant commits an unfair or deceptive act or practice by, among other things:

    a.  (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    b.  (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

    c.  (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

    d.  (xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;

    e.  (xiii)  Engaging in any act or practice that is unfair or deceptive to the consumer; and

   f. (xiv) Using any other methods, acts, or practices that mislead or deceive members of the public in a material respect.

73. Section 6-13.1-3 provides that "It is the intent of the legislature that in construing Sections 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. 15 U.S.C. Section 45(a)(1), as from time to time amended."

74. The FTC's Guides For The Use Of Environmental Marketing Claims provide the FTC's interpretation of Section 5 of the FTC Act in the context of environmental marketing and advertising claims:

> Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce. A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. *See* FTC Policy Statement on Deception, 103 FTC 174 (1983). To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims. *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984). In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence. Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results. Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.

16 C.F.R. § 260.2.

75. The conduct described herein is in clear violation of this guidance from the FTC and thus violates Section 5 of the FTC Act and Rhode Island § 6-13.1-1 *et seq.*

76. As a direct and proximate result of Defendants' conduct in connection with the branding, labeling, marketing and selling of Tom's of Maine Products in Rhode Island, Plaintiff and the Rhode Island Class were harmed.

77.     Plaintiff and the other Rhode Island Class Members have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them, and the fact that the product they received (one that contained synthetic, artificial and/or chemically processed ingredients) was less valuable than the product represented to them (a "natural" one). Accordingly, Plaintiff and the other members of the Rhode Island Class were harmed by, and Defendants are liable for, Defendants' actions in violation of Rhode Island § 6-13.1-1 *et seq.*

78.     As a result of the conduct described herein, Defendants violated Section 6-13.1-1 *et seq* and are liable to Plaintiff and the Rhode Island Class for actual damages that Plaintiff and the Rhode Island Class incurred, punitive damages or at the very least the statutory minimum award of $200 per purchase of Tom's of Maine Products, whichever is greater, together with all related court costs, attorneys' fees, and interest.

## **Jury Demand**

Plaintiff demands a trial by jury on all claims so triable.

## **Prayers for Relief**

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

1)     Allowing this action to proceed as a class action under Federal Rule Civil Procedure 23, Massachusetts G.L. c. 93A, §9, and Rhode Island G.L. § 6-13.1-5.2 *et seq.*;

2)     Determining that Defendants' conduct in connection with Tom's of Maine Products as described herein, and as will be established at trial, violated the law as stated above;

3)     Awarding restitution, including disgorgement of profits obtained by Defendants from Tom's of Maine Products, as a result of its violations of the law;

4)      Awarding Plaintiff and the class members further monetary damages including treble damages (for the Massachusetts Class), punitive damages (for the Rhode Island Class), statutory damages (for both Classes), interest, and costs;

5)      Awarding counsel for the Plaintiff and the Classes their reasonable attorneys' fees and costs;

6)      Enjoining Defendants from using false and deceptive marketing, branding and labeling of its Tom's of Maine Products as "natural" as described herein; and

7)      Any such other and further relief which the Court finds just and proper.

Dated:  December 13, 2019                    By her attorneys,

                                             /s/ Ian J. McLoughlin
                                             Edward F. Haber (BBO# 215620)
                                             Ian J. McLoughlin (BBO # 647203)
                                             Adam M. Stewart (BBO# 661090)
                                             SHAPIRO HABER & URMY LLP
                                             Seaport East
                                             Two Seaport Lane
                                             Boston, MA 02210
                                             Telephone: (617) 439-3939
                                             Facsimile: (617) 439-0134
                                             ehaber@shulaw.com
                                             imcloughlin@shulaw.com
                                             astewart@shulaw.com

                                             *Counsel for Plaintiff Angela Munsell and the Putative Classes*