## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ANGELA MUNSELL, individually and on
behalf of others similarly situated,

     *Plaintiff*,

        v.

COLGATE-PALMOLIVE CO., and TOM'S OF
MAINE INC.

     *Defendants*.

Civil Action No. 1:19-cv-12512-NMG

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Edward F. Haber (BBO# 215620)
Ian J. McLoughlin (BBO # 647203)
Adam M. Stewart (BBO# 661090)
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
imcloughlin@shulaw.com
astewart@shulaw.com

***Counsel for Plaintiff Angela Munsell and
the Putative Classes***

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ALLEGATIONS IN THE COMPLAINT.......................................................................................3

    A.   The Growing Market for Natural Personal Care Products.......................................4

    B.   Defendants Profited From Misleading Consumers About Their Purported Natural Products.....................................................................................................................5

    C.   Plaintiff's Experience with the Products ..................................................................6

ARGUMENT....................................................................................................................................7

    A.   The Complaint Sufficiently Alleges that a Reasonable Consumer Would be Deceived by Defendants' Use of "Natural" on the Products' Labels .........................................8

    B.   Plaintiff Has Pled Her Allegations With More Than Sufficient Particularity........................13

    C.   Plaintiff Has Standing to Prosecute Class Claims for All Products That Are Substantially Similar to the Products She Purchased. ....................................................................16

    D.   This Court Has Personal Jurisdiction Over the Rhode Island Class Claims.........................17

    E.   Colgate's Liability is Sufficiently Pled in the Complaint…………………………………20

CONCLUSION…………………………………………………………………………..20

**TABLE OF AUTHORITIES**

*Cases*

*Am.'s Health & Res. Ctr. v. Promologics*, 2018 U.S. Dist. LEXIS 120590 (N.D. Ill. July 19, 2018)…....20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………………..7

*Aspinall v. Philip Morris Cos.*, 442 Mass. 381 (2004)……………………………………………….8

*Balser v. Hain Celestial Group, Inc.*, 2013 U.S. Dist. LEXIS 180220 (C.D. Cal. Dec. 18, 2013)……….13

*Balser v. Hain Cleestial Grp., Inc.*, 640 Fed. App'x 694 (9th Cir. Feb. 22, 2016)…………………11, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………………7

*Branca v. Bai Brands, LLC*, 2019 U.S. Dist. LEXIS 37105 (C.D. Cal. Mar. 7, 2019)…………………… 9, 21

*Brazil v. Dole Packaged Foods, LLC,* 660 Fed. App'x 531 (9th Cir. 2016)…………………………….10

*Brenner v. Proctor & Gamble Co.*, 2016 U.S. Dist. LEXIS 187303 (C.D. Cal. Oct. 20, 2016)……….9, 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017)...................................passim

*Cabrera v. Bayer Healthcare, LLC*, 2019 U.S. Dist. LEXIS 42290 (C.D. Cal. Mar. 6, 2019)…...10, 18, 19

*Carlson v. Gillette Co.*, 2015 U.S. Dist. LEXIS 144559 (D. Mass. Oct. 23, 2015) ............................ 10, 13

*Casso's Wellness Store & Gym LLC v. Spectrum Lab. Prods., Inc.*,
     2018 U.S. Dist. LEXIS 43974 (E.D. La. Mar. 19, 2018) ......................................................18

*Chavez v. Church & Dwight Co.*, 2018 U.S. Dist. LEXIS 2238191 (N.D. Ill. May 16, 2018)………….20

*Chavira v. OS Rest. Servs., LLC*, 2019 U.S. Dist. LEXIS 167935 (D. Mass. Sept. 30, 2019)………….19

*Crane v. Sexy Hair Concepts, LLC*, 2017 U.S. Dist. LEXIS 220112 (D. Mass. Oct. 10, 2017)……...9, 16

*Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) ........................................................passim

*Feller v. Transamerica Life Ins. Co.*, 2017 U.S. Dist. LEXIS 206822 (C.D. Cal. Dec. 11, 2017) ...............18

*Ferrari v. Vitamin Shoppe, Inc.*, 2018 U.S. Dist. LEXIS 55791 (D. Mass. Mar. 30, 2018) ......................17

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
     2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sept. 22, 2017)........................................................ 18, 19

*Gasser v. Kiss My Face, LLC*, 2017 U.S. Dist. LEXIS 175273 (N.D. Cal. Oct. 23, 2017) ........................9

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................................ 9, 11

*Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455 (M.D. Pa. 2019) ....................................18

*Harris v. Koenig*, 602 F. Supp. 2d 39 (D.D.C. 2009)……………………………………....16

*Hicks v. Hous. Baptist Univ.*, 2019 U.S. Dist. LEXIS 664 (E.D.N.C. Jan. 3, 2019) ................18

*In re Chinese-Manufactured Drywall Prods. Liability Litig.*,
  2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 30, 2017) ......................................... 18, 19

*In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. Nov. 15, 2012................................10

*In re Dental Supplies Antitrust Litig.*, 2017 U.S. Dist. LEXIS 153265 (E.D.N.Y. Sept. 20, 2017)……..19

*In re Morning Song Bird Food Litig.*,
  2018 U.S. Dist. LEXIS 44825 (S.D. Cal. Mar. 19, 2018) ..........................................................18

*Jou v. Kimberly-Clark Corp.*, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013).................... 9, 12

*Kaufman v. CVS Caremark Corp.*, 836 F.3d 88 (1st Cir. 2016) ....................................................14

*Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754 (W.D. Mo. 2015)……………………..13

*Leardi v. Brown*, 394 Mass. 151 (1985)……...……………………………………………..8

*Lima v. Post Consumer Brands, LLC*, 2019 U.S. Dist. LEXIS 171729 (D. Mass. Oct. 2, 2019)..............13

*Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013)…………………………………...16

*Morales v. Kraft Foods Grp., Inc.*, 2014 U.S. Dist. LEXIS 198833 (C.D. Cal. Oct. 23, 2014) ........... 10, 11

*Mussat v. IQVIA, Inc.*, 2020 U.S. App. LEXIS 7560 (7th Cir. Mar. 11, 2020..............................3, 18, 20

*O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441 (D. Mass. 2018)..............................11, 15, 16

*Paulino v. Conopco, Inc.*, 2015 U.S. Dist. LEXIS 108165 (E.D.N.Y. Aug. 17, 2015) ..........................9, 16

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) ................................................12

*Personal Allen v. ConAgra Foods, Inc.*,
  2018 U.S. Dist. LEXIS 208196 (N.D. Cal. Dec. 10, 2018) ..................................................18

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 U.S. Dist. LEXIS 114733
(E.D. Pa. July 24, 2017)……………………………………………………………....19

*Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013) ....................................................16

*Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012)…………………..13

*Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5 (1st Cir. 2004) ........................................................15

*Rosenberg v. LoanDepot.com LLC,*
2020 U.S. Dist. LEXIS 11928 (D. Mass. Jan. 24, 2020)…………………………………....…..passim

*Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43 (D. Mass. 2018) ............................................19

*Shank v. Presidio Brands, Inc.*, 2018 U.S. Dist. LEXIS 10894 (N.D. Cal. Jan. 23, 2018) ........................10

*Silva v. Smucker Natural Foods, Inc.*, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y Sept. 14, 2015)……….9

*Spratley v. FCA US LLC*, 2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. Sept. 12, 2017)……………....19

*Vass v. Blue Diamond Growers*, 2015 U.S. Dist. LEXIS 175317 (D. Mass. Aug. 11, 2015)......................15

*Webb v. Dr. Pepper Snapple Grp., Inc.*, 2018 U.S. Dist. LEXIS 71270 (W.D. Mo. Apr. 25, 2018)…..9, 13

*Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ........................................13

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)……………………………..………9, 11

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015)................................................................13

*York v. Andalou Naturals, Inc.,*
No. 16-CV-894-SMY-DGW, 2016 U.S. Dist. LEXIS 169923 (S.D. Ill. Dec. 8, 2016) .............. 9, 11

## ***Statutes***

M.G.L. c. 93A……………………………………………………………………passim

Rhode Island G.L. § 6-13.1-1 *et seq*……………………………………………………..passim

Plaintiff Angela Munsell respectfully submits this opposition to Defendants Colgate-Palmolive Co. and Tom's of Maine, Inc.'s (collectively "Defendants") Motion to Dismiss (the "Motion") (ECF No. 15).[1]  For the reasons set forth below, the Motion should be denied.

## INTRODUCTION

Plaintiff is a consumer who, like numerous other consumers in Massachusetts and Rhode Island, purchased Tom's of Maine toothpaste and deodorant products (the "Products")[2] on the basis of Defendants' false and misleading representations that the Products were "natural" when in fact they contained artificial, synthetic and/or chemically processed ingredients. Defendants have moved to dismiss the Complaint on the grounds that: (1) no "reasonable consumer" could have been deceived by Tom's use of the term "natural" on the Products' labels; (2) Plaintiff has failed to plead her 93A claim with particularly under Fed. R. Civ. P. 9(b); (3) Plaintiff lacks standing to bring claims with respect to Products she did not personally purchase; (4) the Court lacks personal jurisdiction with respect to the proposed Rhode Island class members; and (5) the Complaint does not plead sufficient allegations against Colgate. None of Defendants' arguments have merit.

First, notwithstanding the clear allegations that Defendants uniformly labeled the Products as "natural" even though they contain artificial, synthetic and/or chemically processed ingredients, Defendants argue that no reasonable consumer could have been deceived by their use of the term natural. But this is a question of fact that cannot be resolved at the pleading stage.  Furthermore, the Complaint expressly pleads that Plaintiff and the Classes were misled by the Products' labels into believing that Defendants' "natural" Products did not contain artificial ingredients. There are a plethora of decisions denying similar motions to dismiss and holding that a company's representations of goods as "natural" could mislead reasonable consumers into believing the

---

[1] Defendants' Memorandum in Support of Their Motion to Dismiss (ECF No. 16) is cited herein as "Def. Br."

[2] A list of the Products at issue is included in Exhibit 1 to Plaintiff's Class Action Complaint (the "Complaint"). ECF No. 1-3.  Citations to the Complaint herein are "¶__".

products did not contain artificial or synthetic ingredients when, in fact, they did. Courts also have repeatedly rejected Defendants' contention that they can make false statements on the face of the Products' packaging and then rely on a buried ingredients list or disclosures elsewhere to somehow cure their misrepresentations, particularly at the motion to dismiss stage.

Second, Defendants argue that Plaintiff's 93A claim does not satisfy Fed. R. Civ. P. 9(b), but the allegations in the Complaint are pled with the requisite level of particularity.  The Complaint alleges that during the Class Period (December 5, 2015 to the present) Defendants misrepresented on the face of every one of their Products that they were "natural" when they in fact contained artificial, synthetic and/or chemically processed ingredients.  The Complaint further alleges that this deception allowed Defendants to charge (and led Plaintiff and the Classes to pay) a price premium for the Products based on the misrepresentation that they were "natural". Defendants' assertion that Plaintiff must allege further details regarding her purchases is not the law. The First Circuit has held that the "specificity requirement extends only to the particulars of the allegedly misleading statement itself," and the Complaint provides those details.

Third, Defendants argue that Plaintiff lacks standing to pursue claims for specific Products she did not purchase, but Plaintiff has standing to assert her claims with respect to all of the Products even though she only purchased some of them.  The Complaint clearly alleges that all of the Products contain the same "natural" misrepresentation and all of them contain artificial, synthetic and/or chemically processed ingredients. Defendants concede that where a plaintiff "purchased products and alleged misrepresentations on those products are substantially similar to the products not purchased" (Def. Br. at 16) then a plaintiff has standing to pursue her claims with respect to all such products. This is precisely the case here. At a minimum, the Court should deny the Motion and decide this issue at the class certification stage, following discovery regarding the similarity between the Products listed on Exhibit 1 to the Complaint.

2

Fourth, Defendants aver that the Court lacks personal jurisdiction with regard to the claims brought on behalf of putative Rhode Island class members for violation of Rhode Island's consumer protection statute, Rhode Island G.L. § 6-13.1-1 *et seq.*[3] Defendants so argue even though the Complaint expressly pleads that Plaintiff, during the Class Period, was a resident of Rhode Island and purchased the Products during that time in Rhode Island. Defendants base their jurisdiction argument on a misreading of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017). As Defendants acknowledge, this Court, in *Rosenberg v. LoanDepot.com LLC*, 2020 U.S. Dist. LEXIS 11928, at *12-13 (D. Mass. Jan. 24, 2020), held that *Bristol-Myers* does not apply to class actions. That decision is consistent with the majority of other courts to address the issue, including the Seventh Circuit's recent decision in *Mussat v. IQVIA, Inc.*, 2020 U.S. App. LEXIS 7560, *10-16 (7th Cir. Mar. 11, 2020).

Finally, Defendants argue that "Plaintiff makes no allegations of wrongdoing by Colgate," Def. Br. at 19, but this is incorrect. The Complaint makes clear that Colgate specifically purchased Tom's of Maine to benefit from Tom's dominance in the growing "natural" personal care market. The Complaint also alleges that both Colgate and Tom's knew it was deceiving consumers into purchasing the "natural" Products despite them containing artificial ingredients. And the Complaint alleges that Tom's markets, labels, brands and sells the Products in conjunction with Colgate. This is sufficient at the pleading stage.

## ALLEGATIONS IN THE COMPLAINT

Plaintiff brings this class action on behalf of herself and all other individuals who purchased Tom's of Maine toothpaste and deodorant Products in Massachusetts and Rhode Island which

---

[3] Defendants do not dispute that the Court has personal jurisdiction over the c. 93A claims of the putative Massachusetts class.

deceptively, falsely and misleadingly represent that such products are "natural" when the Products actually contain artificial, synthetic and/or chemically processed ingredients. ¶¶ 1, 30-54.[4]

### A.  *The Growing Market for Natural Personal Care Products*

There is a large and growing worldwide market for personal care products that are (or are perceived to be) safer and more environmentally friendly than traditional mainstream personal care products. ¶ 14. Whether products are in fact "natural" and whether they contain artificial, synthetic and/or chemically processed ingredients is important to a reasonable consumer, a fact which Defendants are well aware of and upon which they seek to capitalize. In fact, consumers often pay a substantial premium to purchase personal care products that are represented to be "natural". ¶ 15.

According to a 2016 Wall Street Journal article, "U.S. sales of beauty, household and personal care products that make natural claims have grown 35% since 2012, versus 4% growth for the broader industry." ¶ 18. A 2019 report indicates that the global organic and natural personal care market is expected to continue its large growth and that North America accounts for over 35% of the global market for organic and natural personal care products, driven in large part by consumers' desire to avoid artificial, synthetic or chemically formulated products. The article states that companies in the natural personal care market "are using 'Fear-based product marketing' as a strategy for promoting their organic product line to the customer. Consumers give into this strategy as a consequence of a strong perception about the long-term effects of chemical or synthetic products, due to which they choose organic over synthetic. As a consequence, this trend has been favoring the organic and natural personal care market demand in the last couple of years."  ¶ 19.

---

[4] Defendants contend that three antiperspirants should not be included among the Products (Def. Br. 1 n.1) but these antiperspirants contained "naturally dry" on the labels despite containing aluminum chlorohydrate, which is a synthetic ingredient, and therefore they contain the substantially same misrepresentation as the other Products and should be included among the Products at issue.  Exhibit 1 to Complaint.

B. *Defendants Profited From Misleading Consumers About Their Purported Natural Products*

In March, 2006, when Colgate acquired Tom's of Maine, the press release noted that the "U.S. Market for Natural oral and personal care products is valued at $3 billion and is growing at 15 percent per year." The release also highlighted that Tom's of Maine toothpaste was the "clear market leader commanding 60% share of that channel" and that Colgate had acquired Tom's of Maine specifically to benefit from this sector of the personal care market. ¶ 17.

For years, Defendants have sought to capitalize on the profitable market for "natural" products by marketing and selling the Products as "natural," in an effort to differentiate those Products from other products. ¶ 20. The Products prominently display the "natural" claim on the labels. ¶¶ 21, 24-25. Merriam-Webster's Dictionary defines "natural" as "not artificial". ¶ 16. In other words, the Products' labels deceptively mislead consumers into believing the Products do not contain artificial, synthetic and/or chemically processed ingredients. While the Products are labeled as "natural", the toothpaste Products contain artificial, synthetic and/or chemically processed ingredients including but not limited to xylitol, sodium lauryl sulfate, glycerin, xantham gum and sorbitol. Likewise, the deodorant Products contain artificial, synthetic and/or chemically processed ingredients such as glycerin, glyceryl laurate, propelyne glycol, ascorbic acid, and aluminum chlorohydrate. ¶ 27.[5] Because the Products contain such artificial ingredients, Defendants' representations on the Products' labels that they are "natural" are deceptive, false and misleading to consumers. *Id.*

In marketing the Products as "natural", Defendants target consumers, like Plaintiff, whose purchasing decisions are driven by health and environmental concerns. ¶¶ 2, 22. Defendants deliberately market the Products as being "natural" because it allows them to sell the Products at a price premium over products that are not represented as natural. Defendants know that consumers

---

[5] Exhibit 1 to the Complaint sets forth the artificial, synthetic and/or chemically processed ingredients contained in each of the Products despite the "natural" claim by Defendants on the labels.

will choose the Products over competing products because the Products are represented as "natural". ¶¶ 2, 4, 15, 22.  Defendants know that consumers will pay a price premium for "natural" products and accordingly sell their Products as "natural" with the corresponding price premium above other otherwise comparable products that are not natural and are not marketed as natural. *Id.*

Defendants have spent millions of dollars over the years marketing the Products as "natural," not only through labeling and packaging, but also in print and television advertisements, internet advertisements and social media. ¶ 23. Through this widespread and long-standing marketing strategy, Defendants have convinced customers that the Products are "natural" and that Tom's of Maine is a company that is trustworthy, socially responsible and responsive to the health, safety and environmental concerns of its customers. ¶ 26. Defendants falsely, deceptively and misleadingly misrepresented the Products as "natural" while delivering to consumers the Products with synthetic, artificial and/or chemically processed ingredients. ¶ 28. The "natural" products promised to consumers were substantially more valuable than the Products Defendants actually delivered to consumers. *Id.* Accordingly, Plaintiff and the Classes were economically harmed because they paid for Products that were inferior to and worth less than the Products that Defendants have represented them to be. *Id.* Defendants continue to market, brand, label and sell the Products as "natural" despite containing artificial, synthetic and/or chemically processed ingredients. ¶ 29.

C. *Plaintiff's Experience with the Products*

Plaintiff lived in Taunton, Massachusetts until she moved in the spring of 2016 to Pawtucket, Rhode Island. ¶ 8. Since at least the end of 2015, Plaintiff has regularly purchased Tom's of Maine brand toothpaste marketed as "natural," including without limitation the Cinnamon Clove toothpaste and the Sweet Mint whitening toothpaste as well as Tom's of Maine deodorant which Defendants have labeled and marketed as "natural." Plaintiff purchased these Products from stores in both Massachusetts and Rhode Island, including Target, Walmart and Whole Foods. *Id.* Plaintiff

purchased these Products because she specifically wanted natural toothpaste and deodorant products. When purchasing the Products Plaintiff paid a price premium over and above the price for similar toothpaste and deodorant that did not claim to be "natural." *Id.* Plaintiff and at least hundreds, if not thousands, of other consumers in Massachusetts and Rhode Island have been deceived by Defendants labeling their Products as "natural" despite the fact that they contain artificial, synthetic and/or chemically processed ingredients. ¶¶ 30-54. Plaintiff alleges that Defendants' conduct constitutes unfair and deceptive acts and practices in the conduct of trade and commerce in violation of M.G.L. c. 93A and R.I. G.L. §6-13.1-1 *et seq.* ¶¶ 6, 55-78.

## ARGUMENT

Defendants ask the Court to disregard Plaintiff's well-pled allegations and to weigh contrary evidence, outside of the Complaint, that Defendants contend undermines Plaintiff's claims. But that may not be done by a court in deciding a motion to dismiss. Rather, "[i]n order to survive a motion to dismiss, the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss presents no opportunity for the Court to weigh evidence advocated by both sides; rather, the Court must assume that well-pleaded facts are true and then determine whether such facts state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss fails so long as "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the Complaint, the Court "accepts as true all well-plead facts set out in the complaint and indulges all reasonable inferences in favor of the pleader." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019). Under this standard, the Motion must be denied.

### A. The Complaint Sufficiently Alleges that a Reasonable Consumer Would be Deceived by Defendants' Use of "Natural" on the Products' Labels

Under Chapter 93A, "an advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004).[6] "In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public.'" *Id.* at 394 (quoting *Leardi v. Brown*, 394 Mass. 151, 156 (1985)).

The First Circuit's decision in *Dumont* requires rejection of Defendants' argument that a reasonable consumer could not be misled by Defendants' use of "Natural" on the Products' labels. The First Circuit held that whether a reasonable consumer could be misled or deceived by a defendant's misrepresentations is generally a factual issue to be decided by a jury and is not appropriate for resolution at the pleading stage. *Dumont*, 934 F.3d at 40-41. In *Dumont*, the plaintiff brought a claim under 93A alleging that defendants' "Hazelnut Crème" coffee was misleading and deceptive because the coffee contained no hazelnut. *Dumont*, 934 F.3d at 40-41. The First Circuit reversed dismissal of the complaint, holding that although some consumers may conclude a term means something else if they were "in the grocery store aisle with some time to peruse the package . . . we think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead'" reasonable consumers. *Id.* The First Circuit also reiterated that on a motion to dismiss, the district court "need only determine whether the

---

[6] Other than Defendants' meritless arguments relating to class member jurisdiction addressed below (*infra* at 17), the Motion does not raise any distinct arguments for dismissing Plaintiff's claim under Rhode Island law. Defendants simply assert that the Rhode Island claim should be dismissed for the same reasons that the c. 93A claim should be dismissed. Def. Br. at 2 n.3. As detailed herein, the Motion should be denied in full with respect to the c. 93A claim. Therefore, Defendants' arguments also lack merit with regard to the Rhode Island claims.

complaint's allegations make it plausible that, on a full factual record, a factfinder could reasonably regard the label as having the capacity to mislead." *Id.*

Here, the deception is simple: Defendants represented each and every one of the Products as "natural" prominently on the label and did so even though the Products contained artificial, synthetic and/or chemically processed ingredients. *See, e.g.,* ¶¶ 1-4, 21-27. Under *Dumont* this is all that is required at the pleading stage. And many other courts have repeatedly denied motions to dismiss regarding similar deceptive natural product labels. *See, e.g., Branca v. Bai Brands, LLC,* 2019 U.S. Dist. LEXIS 37105, *24-26 (C.D. Cal. Mar. 7, 2019) (sustaining claims relating to natural claims where products contains artificial ingredients); *Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 478-79 (S.D.N.Y. 2014) (upholding claims relating to "natural" labeling of products containing synthetic ingredients); *York v. Andalou Naturals, Inc.,* No. 16-CV-894-SMY-DGW, 2016 U.S. Dist. LEXIS 169923, at *6 (S.D. Ill. Dec. 8, 2016) (same); *Gasser v. Kiss My Face, LLC,* 2017 U.S. Dist. LEXIS 175273, *13-16 (N.D. Cal. Oct. 23, 2017) (upholding claims relating to misrepresentations of sunscreen as natural when it contained synthetic ingredients); *Brenner v. Proctor & Gamble Co.,* 2016 U.S. Dist. LEXIS 187303, *10-17 (C.D. Cal. Oct. 20, 2016) (sustaining claims relating to baby products represented as natural but containing synthetic ingredients); *Paulino v. Conopco, Inc.,* 2015 U.S. Dist. LEXIS 108165, *10-15 (E.D.N.Y. Aug. 17, 2015) (upholding claims relating to personal care products represented as "naturals" but contained artificial ingredients); *Silva v. Smucker Natural Foods, Inc.,* 2015 U.S. Dist. LEXIS 122186, *23–26 (E.D.N.Y Sept. 14, 2015) (upholding deceptive "natural" product claims); *Jou v. Kimberly-Clark Corp.,* 2013 U.S. Dist. LEXIS 173216, *25 (N.D. Cal. Dec. 10, 2013) (upholding natural claims for baby products containing synthetic ingredients; "[w]hether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn—that the product is natural, meaning it is not made with any non-natural

ingredients."); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100-1101 (C.D. Cal. Nov. 15, 2012) (sustaining claims misrepresenting oil as natural because it contained GMOs).[7]

Defendants' arguments to the contrary lack any merit. As an initial matter, the Court should reject Defendants' attempts to offer unauthenticated pictures purporting to be of the sides and back of their Products' packaging as well as excerpts from the Tom's website. Plaintiff has not made any allegations relating to the Tom's website and therefore has not incorporated by reference any material from the website. Further, the partially illegible pictures from the sides and back of the packaging should not be considered by the Court because Defendants have not properly authenticated these images and established that such packaging is representative of the actual packaging of its Products during the Class Period. *See, e.g., Carlson v. Gillette Co.*, 2015 U.S. Dist. LEXIS 144559, *5 n.3 (D. Mass. Oct. 23, 2015) (refusing to consider images of packaging submitted by defendants at motion to dismiss); *Shank v. Presidio Brands, Inc.*, 2018 U.S. Dist. LEXIS 10894, *9-11 (N.D. Cal. Jan. 23, 2018) (same); *Morales v. Kraft Foods Grp., Inc.*, 2014 U.S. Dist. LEXIS 198833, *16-17 (C.D. Cal. Oct. 23, 2014) (same).

But even if the Court were to consider the additional statements made on the website or packaging, the Motion must still be denied. The additional statements on the side of the packaging further demonstrate the misleading nature of the Products' labels. For example, Defendants double-down on their misrepresentations that the Products are "natural" by stating that "We've been making safe and effective ***natural*** personal care products for you and your family since 1970!"

---

[7] *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, (9th Cir. 2008) (reversing dismissal of claims relating to "real fruit" snacks that did not contain fruit); *Crane v. Sexy Hair Concepts, LLC*, 2017 U.S. Dist. LEXIS 220112, *6-8 (D. Mass. Oct. 10, 2017) (sustaining claims that product was "sulfate free" when it contained suflates); *Webb v. Dr. Pepper Snapple Grp., Inc.*, 2018 U.S. Dist. LEXIS 71270, *6-10 (W.D. Mo. Apr. 25, 2018) (denying motion to dismiss complaint alleging misrepresentations that soda was "Made from Real Ginger" but contained no ginger); *Carbrera v. Bayer Healthcare, LLC*, 2019 U.S. Dist. LEXIS 42290, *23-24 (C.D. Cal. Mar. 6, 2019) (sustaining claims relating to misrepresentations of vitamins as "complete" where certain essential vitamins were absent); *Brazil v. Dole Packaged Foods, LLC,* 660 Fed. App'x 531, 533 (9th Cir. 2016) (reversing summary judgment for defendants because there was "evidence [that] could allow a trier of fact to conclude that Dole's description of its products as 'All Natural Fruit' [was] misleading to a reasonable consumer").

because Tom's founders "couldn't find **natural** products for their children that supported their healthy lifestyle so they made their own." Def. Br. at 5 (emphasis added). The packaging also contains pictures of nature such as cinnamon cloves, flowers and plants. Def. Br. at 5; ¶¶ 24-25.

Defendants' contention that the fine print ingredients list on the back of the packaging, which includes the artificial and synthetic ingredients buried therein, means that the labels' prominent "Natural" representations on the front could not have misled consumers (Def. Br. at 11-13) has been rejected repeatedly by courts. *See, e.g., York*, 2016 U.S. Dist. LEXIS 169923, at *7 ("This so-called 'ingredient list' defense has been rejected by numerous courts.") (citing cases). Indeed, the First Circuit expressly rejected this argument in *Dumont*, holding that consumers could find the representation on the front of the packaging "sufficient assurance so as to see no need to search the fine print on the back of the package". *Dumont*, 934 F.3d at 40-41.

Similarly, the Ninth Circuit has held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Williams,* 552 F.3d at 939-40; *Balser v. Hain Cleestial Grp., Inc.*, 640 Fed. App'x 694, *4 (9th Cir. Feb. 22, 2016) ("clear that an ingredient list does not correct, as a matter of law, misrepresentations on the product's labels. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings."); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 462 (D. Mass. 2018) (same); *Goldemberg*, 8 F. Supp. 3d at 24-25 (same); *Morales*, 2014 U.S. Dist. LEXIS 198833, at *9-10 (same).

Because, under controlling First Circuit law, Defendants cannot rely on the ingredients list on the back of the labels to "correct" their misrepresentations on the front of the labels, it obviously follows that Defendants also cannot sanitize their misrepresentations by directing consumers to the

11

Tom's website for Defendants' contorted and self-serving "definition" of "natural." Rather, consumers could find the representation on the front of the packaging "sufficient assurance so as to see no need to search the" Defendants' website. *Dumont*, 934 F.3d at 40-41.[8]

The cases cited by Defendants are readily distinguishable. Def. Br. at 10-12. For example, in *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-980 (C.D. Cal. 2013),[9] the plaintiff alleged a definition of natural defined as being "not … manufactured" but the plaintiff conceded the definition did not apply because the pasta was clearly "manufactured in mass."[10] Here, in stark contrast, Plaintiff has alleged that "natural" means not containing artificial or synthetic ingredients, which the Products undisputedly, in fact, contain. In *Brenner v. Proctor & Gamble Co.*, 2016 U.S. Dist. LEXIS 187303, * 16-17 (C.D. Cal. Oct. 20, 2016), the court concluded that the very Merriam-Webster definition of natural cited by Plaintiff here is consistent with a reasonable consumer interpreting natural to mean the product does not include synthetic ingredients.

Many of the other cases cited by Defendants (Def. Br. at 10-12) did not allege affirmative

---

[8] The National Advertising Division of the Council of Better Business Bureaus has previously criticized Defendants' assertion that directing consumers to its website for more information on what it means by "natural" somehow rectifies the misleading nature of its packaging. On September 20, 2016, the NAD published a recommendation that Colgate discontinue the use of its claims of "natural" and "naturally" relating to the Tom's of Maine "Naturally Dry" antiperspirants. https://asrcreviews.org/nad-recommends-colgate-palmolive-discontinue-natural-naturally-claims-for-toms-of-maine-naturally-dry-antiperspirant-advertiser-appeals/. The NAD noted that it was "not persuaded that listing of ingredients on product packaging and directing consumers to the Tom's of Maine webpage for its definition of natural and information about its Stewardship Model cured the misimpression created by calling Tom's of Maine Antiperspirant products 'naturally dry.'"

[9] At least one court has criticized the holding in *Pelayo* as being inconsistent with the FTC authority it relied upon as well as controlling authority by the Ninth Circuit. *Jou*, 2013 U.S. Dist. LEXIS 173216, at *31-32.

[10] The *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-757 (N.D. Ill. 2015) case does not aid Defendants' position. The *Ibarrola* court dismissed claims that Kind snack products with labels stating "no refined sugars" deceived consumers into believing the products contained only "'naturally occurring' sugars that has not been refined at all." Relying on the *Pelayo* decision, the *Ibarrola* court concluded a reasonable consumer could not have been deceived by "no refined sugars" because the products contained evaporated cane juice and molasses derived from sugar cane, which must be refined before eating. *Id*. The *Ibarrola* court's conclusion at the pleading stage that "a reasonable consumer would know that all sugar cane-derived sweeteners suitable for human consumption must be at least partially refined" and that the label "used the word 'refined' as a term of art to distinguish partially refined sugars like evaporated cane juice and molasses from fully refined sugars like table sugar", is inconsistent with the First Circuit's decision in *Dumont*.

misrepresentations on the labels as is the case here.[11] *Lima v. Post Consumer Brands, LLC*, 2019 U.S. Dist. LEXIS 171729, *7-10 (D. Mass. Oct. 2, 2019) (dismissing allegations that Honey Bunches of Oats cereal, which contained the word honey and pictures of honey, implied that honey was the cereal's primary sweetener rather than the flavor of the cereal, distinguishing *Dumont* because the product did contain honey and made no express representations that honey was the primary sweetener); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, *9-12 (N.D. Cal. July 2, 2010) (dismissing complaint alleging Crunch Berries cereal implied the product was made with real fruit; "[t]here are no representations that the Crunch Berries are derived from real fruit nor are there any depictions of any fruit on the cereal box."); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing allegations that labels with large pictures of fruit, quinoa and yogurt, were deceptive because they implied the items were the predominant ingredients in the product but were only a small piece of the ingredients, distinguishing the facts from cases with affirmative false statements on the packaging including where packages say natural but contains artificial ingredients); *Carlson*, 2015 U.S. Dist. LEXIS 144559, at *15 (dismissing allegations that batteries were "guaranteed for 10 years *in storage*" as not misleading consumers into believing the batteries would not leak or fail *during use*) (emphasis added).[12]

**B. Plaintiff Has Pled Her Allegations With More Than Sufficient Particularity**

[11] The *Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) case was decided at the class certification stage. *Id.* at *1-2. The plaintiff alleged that the "Made with Real Vegetables" labeling on certain crackers was deceptive because it implied the crackers were "healthy" and "contain[] a significant amount of vegetables." *Id.* at *10. The court dismissed the claims because the statement was true (the crackers contained some vegetables) and did "not claim any specific amount of vegetables". *Id.* at *7-12. The court expressly distinguished the case from ones, like here, where the label had affirmative false statements.
[12] The *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) decision has been called into question based on subsequently appellate authority rejecting the analysis it used, including its consideration of the "ingredient list" defense. *Webb*, 2018 U.S. Dist. LEXIS 71270, at *8-10. The *Kelly* court also relied upon the *Balser v. Hain Celestial Group, Inc.*, 2013 U.S. Dist. LEXIS 180220 (C.D. Cal. Dec. 18, 2013) decision, which was reversed on appeal by the Ninth Circuit. *Balser*, 640 Fed. Appx. at 695-696.

13

Defendants' assertion that Plaintiff has failed to plead her claims with sufficient particularity pursuant to Rule 9(b) ignores what the law requires at the pleading stage. Def. Br. at 13-15. The First Circuit has held that "[t]he circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when of the allegedly [misleading] representation.'" *Dumont,* 934 F.3d at 38 (quoting *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016)).

The First Circuit's decisions in *Dumont* and *Kaufman* are determinative of this issue. In *Kaufman*, the consumer alleged that vitamin E supplements with labels that claimed the product supported "heart health" were deceptive due to a lack of scientific studies supporting the statement. *Kaufman*, 836 F.3d at 90-91. The First Circuit held the particularity requirement was met because "CVS is the 'who'; the "heart health" statements are the 'what'; the label is the 'where'; and the occasion on which Kaufman purchased the product is the 'when.'" *Id.* Similarly*, in *Dumont*, the consumer alleged that the defendants' "Hazelnut Crème" coffee was misleading because it did not contain any hazelnuts. *Dumont*, 934 F.3d at 39. The court found the allegations were sufficiently particularized because "[defendants] are the 'who'; the 'Hazelnut Créme' statement is the 'what'; the label is the 'where'; and the occasion on which Dumont purchased the coffee is the 'when.'".

Plaintiff has alleged the "who, what, where, and when of the allegedly [misleading] representation" with particularity. The who is Defendants, the what is the "natural" statement on the front of the Products' labels that is misleading and deceptive because the Products contain the artificial, synthetic and/or chemically processed ingredients detailed on Exhibit 1 to the Complaint, the label of the Products is the where, and the Class Period, during which Plaintiff and the class members bought the Products, is the when. Plaintiff also alleges how she and the class members were harmed by these misrepresentations because they paid more for products that were supposed to be "natural" given the price premium associated with such natural products.

14

Defendants' assertion that Rule 9(b) requires Plaintiff to plead the specific details of her purchases is simply wrong. Def. Br. at 13-14. The First Circuit has made clear that "'the specificity requirement extends only to the particulars of the allegedly misleading statement itself' not to the circumstances of the plaintiff's conduct in reliance on it." *O'Hara*, 306 F. Supp. 3d at 462[13] (quoting *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 18-19 (1st Cir. 2004)); *Dumont*, 934 F.3d at 38-39 (finding "no merit in defendants' contention that the complaint failed to satisfy Rule 9(b) by neglecting to include further details about Dumont's reliance on the allegedly misleading statement, including the date and location of her purchase").

The sole case that Defendants rely upon in support of their Rule 9(b) argument (Def. Br. at 14), *Vass v. Blue Diamond Growers*, 2015 U.S. Dist. LEXIS 175317 (D. Mass. Aug. 11, 2015), does not command a different result. To the extent the *Vass* court required detailed particularity with respect to the plaintiff's purchases, it is entirely inconsistent with the First Circuit's subsequent holding in *Dumont*. Indeed, the *Vass* decision is an outlier and no court has cited it for the principle that a complaint must allege the particularized details of a plaintiff's purchases.

Defendants' contention that the details of Plaintiff's purchases are somehow relevant because Plaintiff may have been an absent class member and released prior claims in a class action settlement relating to Tom's products years ago is specious. Def. Br. at 14-15. As Defendants concede, the *Gay* class action settlement only released claims arising as a result of misrepresentations regarding certain Tom's products being marketed as "natural" during the period between March 25, 2009 and September 23, 2015. *Id.* at 14. In contrast, at issue here are Defendants' false, misleading and deceptive statements regarding the Products between December 5, 2015 and the present. ¶¶ 31,

---

[13] In *O'Hara*, the court found the particularity requirement was met where the consumer alleged that the defendants made misleading statements on the packaging of Guinness Extra Stout that it was brewed at the St. James's Gate brewery in Ireland when it was actually brewed in Canada. *O'Hara*, 306 F. Supp. 3d at 455-456, 461-462. The court rejected the very argument advanced here by Defendants, ruling that the plaintiff did not need to plead the particulars of his purchases because the allegations simply needed to be plausible that plaintiff purchased the Extra Stout during the period it was brewed in Canada, and the complaint did so. *Id.*

43. The claims at bar concern an entirely different period of time <u>after</u> the time period at issue in and covered by the settlement in the *Gay* action.[14]

### C. Plaintiff Has Standing to Prosecute Class Claims for All Products That Are Substantially Similar to the Products She Purchased.

Defendants' assertion that Plaintiff lacks standing and cannot maintain a class action with respect to the Products that she did not personally purchase is not the law. Def. Br. at 15-17. "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013); *Crane,* 2017 U.S. Dist. LEXIS 220112, at *18 (same).[15] Defendants concede this point. Def. Br. at 16.

As alleged in the Complaint, Defendants deceived consumers by labeling each of the Products in Exhibit 1 to the Complaint as "natural" despite each containing artificial, synthetic and/or chemically processed ingredients. *See, e.g.,* ¶¶ 1-5, 24-28. In other words, Defendants labeled

---

[14] In any event, the Court should not decide this factual issue at the motion to dismiss stage. *See Harris v. Koenig,* 602 F. Supp. 2d 39, 54 (D.D.C. 2009) ("[e]ven if Defendants could shoulder their burden of establishing this affirmative defense of release, they cannot do so through [the instant] motion to dismiss. Defendants must plead, and attempt to prove, after a full record has been made, that they were entitled to involuntarily release Plaintiffs' claims.") (citations omitted).

[15] Defendants' contention that the Court should strike the class allegations "because plaintiff alleges an impermissible 'fail-safe' class" is incomprehensible and, in any event, legally incorrect. Def. Br. at 15 n.10. First, Plaintiff has not proposed fail-safe classes. The allegations are undisputed that all of the Products contain the "natural" misrepresentation on the label and all the Products contain artificial, synthetic or chemically processed ingredients. Thus, class members are readily identifiable as anyone who purchased one of the Products in Massachusetts or Rhode Island during the relevant period and a determination of the class membership is not dependent on resolution of the ultimate liability question. ¶¶ 31, 43. Second, this Court and others have repeatedly found it premature to strike class allegations in connection with a motion to dismiss. *See, e.g., Rosenberg,* 2020 U.S. Dist. LEXIS 11928, at *12-13 ("Pre-discovery motions to strike are, however, disfavored and courts should, 'exercise caution when striking class action allegations based solely on the pleadings. . . . As a result, allowing such a motion is uncommon and courts 'should typically await the development of a factual record.'") (quoting *Manning v. Bos. Med. Ctr. Corp.,* 725 F.3d 34, 59 (1st Cir. 2013)); *Paulino v. Conopco, Inc.*, 2015 U.S. Dist. LEXIS 108165, *23 (E.D.N.Y. Aug. 17, 2015) (defendant's "request to strike plaintiffs' nationwide class allegations at the motion to dismiss stage is premature; the issues they raise are better addressed on a motion for class certification.") (citing cases). Indeed, the *O'Hara* case cited by Defendants denied the motion to strike the class allegations in that case.

all of the Products (both toothpastes and deodorants) with the same misleading label - "natural" - and all of the Products contain unnatural ingredients. *Id.* Plaintiff purchased toothpastes and deodorants that are among the Products at issue. ¶ 8. Because the Complaint establishes that all of the Products are substantially similar in all relevant respects, and the misrepresentations are the same, Plaintiff has standing to bring claims with respect to all of the Products.

Defendants' argument that Plaintiff lacks standing for the Products she did not purchase because the ingredients "are not ***identical*** from product to product" ignores the applicable standard. Def. Br. at 16 (emphasis added). Indeed, it is quite disingenuous of Defendants to argue that the different flavors and varieties of their toothpastes and deodorants make the Products not substantially similar with respect to the claims here given that Colgate's corporate representative testified under oath at her deposition in another case that the term "natural" appears on the packaging of **all** Tom's of Maine toothpastes and deodorants regardless of the flavors, scents or varieties. Exhibit A hereto.

The *Ferrari v. Vitamin Shoppe, Inc.*, 2018 U.S. Dist. LEXIS 55791 (D. Mass. Mar. 30, 2018), case cited by Defendants is not to the contrary. Def. Br. at 16.  In *Ferrari*, the court recognized that a plaintiff can assert misrepresentation class claims with respect to substantially similar products but found that the plaintiff there could not maintain claims for products that contained "markedly different" statements. 2018 U.S. Dist. LEXIS 55791, at *4-5 & n.4.  That is simply not the case here.

## D.  This Court Has Personal Jurisdiction Over the Rhode Island Class Claims

Defendants argue that this Court does not have jurisdiction with respect to the claims Plaintiff brings on behalf of Rhode Island class members based on the Supreme Court's decision in *Bristol-Myers*.  Def. Br. at 17-19.  This argument fails as a matter of law.

Defendants do not contest jurisdiction with respect to Plaintiff's individual claims under both Massachusetts and Rhode Island law (or the claims of the Massachusetts class), and therefore

the sole question is whether the Court should consider jurisdiction with respect to the unnamed Rhode Island class members. This Court has already held that the *Bristol-Myers* decision does not apply to class actions. *Rosenberg*, 2020 U.S. Dist. LEXIS 11928, at *31-33.[16] And the Seventh Circuit recently reached the same conclusion. *Mussat*, 2020 U.S. App. LEXIS 7560, at *10-16 ("named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so."). Furthermore, the large majority of district courts to address the issue have held that *Bristol-Myers* does not apply to class actions and hence the courts do not analyze the issue of jurisdiction with respect to unnamed class members. *See, e.g., In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 2017 U.S. Dist. LEXIS 197612, *31-43 (E.D. La. Nov. 30, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 U.S. Dist. LEXIS 155654, at *13-16 (N.D. Cal. Sept. 22, 2017); *Cabrera*, 2019 U.S. Dist. LEXIS 42290, at *16-20; *Personal Allen v. ConAgra Foods, Inc.*, 2018 U.S. Dist. LEXIS 208196, *16-20 (N.D. Cal. Dec. 10, 2018); *Casso's Wellness Store & Gym LLC v. Spectrum Lab. Prods., Inc.*, 2018 U.S. Dist. LEXIS 43974, at *11-16 (E.D. La. Mar. 19, 2018); *Feller v. Transamerica Life Ins. Co.*, 2017 U.S. Dist. LEXIS 206822, *46-49 (C.D. Cal. Dec. 11, 2017); *In re Morning Song Bird Food Litig.*, 2018 U.S. Dist. LEXIS 44825, at *10-17 (S.D. Cal. Mar. 19, 2018); *Branca*, 2019 U.S. Dist. LEXIS 37105, at *36-38; *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 464-465 (M.D. Pa. 2019); *Hicks v. Hous. Baptist Univ.*, 2019 U.S. Dist. LEXIS 664, at *15-19 (E.D.N.C. Jan. 3, 2019).

As this Court and many others have recognized, *Bristol-Myers* is inapplicable to class actions for two primary reasons. First, *Bristol-Myers* involved a mass tort action which is "fundamentally distinguishable from a class action" because mass tort cases involve individual named plaintiffs who are real parties in interest whereas in a class action, the named plaintiff is the only real party in interest for jurisdictional purposes. *Rosenberg*, 2020 U.S. Dist. LEXIS 11928, at *32. Second, a class

---

[16] Indeed, Justice Sotomayor in her dissent in *Bristol-Myers* recognized that the court's decision did not address whether the jurisdictional analysis applied in the context of a class action. *Bristol-Myers*, 137 S. Ct. at 1789 n. 4.

action, unlike a mass tort action, requires the satisfaction of "additional due process standards for certification under Fed. R. Civ. P. 23." *Id.*

Based on these "inherent differences" between mass tort cases and class actions, and the "well-reasoned caselaw holding that the [*Bristol-Myers*] case does not apply in the class action context", this Court expressly rejected the exact argument Defendants make here. *Rosenberg,* 2020 U.S. Dist. LEXIS 11928, at *32-33. While Defendants recognize this Court has rejected their argument previously, they ask this Court to change its mind in this case. Def. Br. at 18.  But there is no reason for the Court to reconsider its well-reasoned decision in *Rosenberg,* and Defendants have not offered one. Nothing has changed since *Rosenberg* except that the Seventh Circuit has joined this Court and the majority of other courts that have rejected Defendants' arguments. Nor do the cases Defendants cite, which all pre-dated *Rosenberg,* affect this Court's prior analysis in any way. Two of the cases cited by Defendants involved collective action claims under the Fair Labor Standards Act, which those courts recognized are more akin to mass tort actions than class actions because only plaintiffs that opt-in are real parties in interest to the litigation. *Chavira v. OS Rest. Servs., LLC,* 2019 U.S. Dist. LEXIS 167935, *12-17 (D. Mass. Sept. 30, 2019) (citing *Roy v. FedEx Ground Package Sys., Inc.,* 353 F. Supp. 3d 43, 51-61 (D. Mass. 2018)). The other cases either involved no analysis of the issue[17] or are decisions from the Northern District of Illinois that have now been overruled by the

---

[17] The decisions cited by Defendants (Def. Br. at 19) in *Spratley v. FCA US LLC,* 2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. Sept. 12, 2017), and *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.,* 2017 U.S. Dist. LEXIS 114733 (E.D. Pa. July 24, 2017), conducted no analysis regarding the application of *Bristol-Myers* to class actions. *Fitzhenry-Russell,* 2017 U.S. Dist. LEXIS 155654, at *15 n.4 (noting lack of any analysis in *Plumbers' Union* decision); *Cabrera,* 2019 U.S. Dist. LEXIS 42290, at *18 (noting *Spratley* court "dismissed claims of non-resident *named* plaintiffs in putative class actions without deciding whether *Bristol-Meyers* [sic] would also apply to unnamed plaintiffs"). Moreover, the discussion of *Bristol-Myers* in *In re Dental Supplies Antitrust Litig.,* 2017 U.S. Dist. LEXIS 153265, at *33-38 (E.D.N.Y. Sept. 20, 2017) was dicta and found that *Bristol-Myers* applied to class actions in three sentences without any substantive analysis. In re *Chinese-Manufactured Drywall,* 2017 U.S. Dist. LEXIS 197612, at *34-35.

Seventh Circuit's decision in *Mussat*.[18] As in *Rosenberg*, this Court should decline to apply the *Bristol-Myers* analysis to this class action and exercise jurisdiction over Defendants for the claims of the Rhode Island class.

**E. Colgate's Liability is Sufficiently Pled in the Complaint**

Lastly, Defendants' argument that Plaintiff has not alleged any wrongdoing as to Colgate, Def. Br. at 19, ignores the allegations in the Complaint. Plaintiff has alleged that Colgate acquired an 84% stake in Tom's in 2006 for $100 million. ¶ 10. The Complaint further alleges that Colgate admitted in a press release that it acquired Tom's because the "natural" product market was valued at $3 billion, was growing at 15 per year, and that Tom's commanded 60% of that market with its "natural" products. ¶ 17. Colgate went on to admit that it had specifically acquired Tom's in order to profit from the "natural" sector of the personal care market. *Id.* In other words, Colgate acquired Tom's specifically to sell and benefit from Tom's dominance in the "natural" product sector through its sale of the very "natural" Products at issue in this case, which those Products, both when Colgate acquired Tom's and during the Class Period here, in fact, contained artificial ingredients. Following that acquisition, "[i]n conjunction with Colgate, Tom's markets, labels, brands and sells personal care products such as deodorant and toothpaste as 'natural' under the Tom's of Maine brand throughout the United States including in Massachusetts and Rhode Island." ¶ 10. The Complaint alleges that both Colgate and Tom's have continued to sell the Products as "natural" despite knowing that they contain ingredients that are artificial, synthetic and/or chemically processed. *See, e.g.,* ¶¶ 2-5, 20-23. These allegations sufficiently plead Colgate's liability.

<u>CONCLUSION</u>

For the forgoing reasons, the Court should deny Defendants' motion in full.

---

[18] Def. Br. at 19, citing *Am.'s Health & Res. Ctr. v. Promologics*, 2018 U.S. Dist. LEXIS 120590, at *5-7 (N.D. Ill. July 19, 2018); *Chavez v. Church & Dwight Co.*, 2018 U.S. Dist. LEXIS 2238191, at *28-32 (N.D. Ill. May 16, 2018). *Mussat*, U.S. App. LEXIS 7560, *10-16.

Date: March 20, 2020                    Respectfully submitted,

                                        */s/ Adam M. Stewart*
                                        Edward F. Haber (BBO# 215620)
                                        Ian J. McLoughlin (BBO # 647203)
                                        Adam M. Stewart (BBO# 661090)
                                        SHAPIRO HABER & URMY LLP
                                        Seaport East
                                        Two Seaport Lane
                                        Boston, MA 02210
                                        Telephone: (617) 439-3939
                                        Facsimile: (617) 439-0134
                                        ehaber@shulaw.com
                                        imcloughlin@shulaw.com
                                        astewart@shulaw.com

                                        *Counsel for Plaintiff Angela Munsell and
                                        the Putative Classes*

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 20, 2020.

                                        */s/ Adam M. Stewart*
                                        Adam M. Stewart

# EXHIBIT A

```
 1        UNITED STATES DISTRICT COURT
 2        SOUTHERN DISTRICT OF NEW YORK
              16 Civ. 8364(RA)(AJP)
 3    - - - - - - - - - - - - - - - - - - - - - -x
      ANNE DE LACOUR, ANDREA WRIGHT, and
 4    LOREE MORAN, individually and on
      behalf of all others similarly situated,
 5                        Plaintiffs,
 6
 7        -against-
 8
      COLGATE-PALMOLIVE CO., and TOM'S OF
 9    MAINE, INC.,
                          Defendants.
10    - - - - - - - - - - - - - - - - - - - - - -x
11
12          C O N F I D E N T I A L
13
14        DEPOSITION of JOANNE MURPHY, the
15    30(b)(6) in the above-entitled action,
16    held at 888 Seventh Avenue, New York,
17    New York, commencing at 9:19 a.m., on
18    Thrusday, February 15, 2018, taken before
      Alice Schulman, a Shorthand Reporter and
19    Notary Public of the State of New York,
20    pursuant to the Federal Rules of Civil
21    Procedure, and stipulations between Counsel.
22
23
24    Job No. 2809114
25    Pages 1 - 257
```

                                            Page 1

```
 1        A.    Yes, I do.                      01:26:43

 2        Q.    What are those?                 01:26:44

 3        A.    Those are representatives of our   01:26:46

 4   toothpastes.                               01:26:49

 5        Q.    And do you see the red circles  01:26:56

 6   that appear on Page 6, there are four of   01:27:00

 7   them?                                      01:27:03

 8        A.    Yes.                            01:27:04

 9        Q.    What are the red circles        01:27:04

10   surrounding?                               01:27:07

11        A.    They are circling natural on    01:27:08

12   each of those.                             01:27:11

13        Q.    Does the word natural appear on 01:27:12

14   each of the toothpastes on Page 6?         01:27:16

15        A.    Yes, they do, yes, it does.     01:27:20

16        Q.    Does the word natural appear on 01:27:22

17   the packaging of all of Tom's of Maine     01:27:25

18   toothpaste varieties?                      01:27:28

19        A.    Yes.                            01:27:31

20        Q.    How many different varieties of 01:27:31

21   toothpaste does Tom's of Maine sell?       01:27:34

22        A.    I'm going to give a range of    01:27:39

23   between 12 and 15.  If I had the portfolio 01:28:02

24   in front of me, I could better answer.     01:28:06

25        Q.    Tom's of Maine sells between 12 01:28:08
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | and 15 different varieties of toothpaste? | 01:28:13 |
| 2 | A. I'm going to clarify, by my | 01:28:16 |
| 3 | definition of variety, cavity protection | 01:28:19 |
| 4 | is one variety, underneath cavity | 01:28:22 |
| 5 | protection, there are three to four | 01:28:25 |
| 6 | different flavors. | 01:28:28 |
| 7 | Q. So Tom's of Maine sells 12 to 15 | 01:28:28 |
| 8 | different categories of toothpastes, | 01:28:32 |
| 9 | within those there are multiple flavors | 01:28:36 |
| 10 | for each category? | 01:28:39 |
| 11 | A. Correct. And for children's, I | 01:28:40 |
| 12 | would also say the categorization in | 01:28:45 |
| 13 | children's toothpaste, there's a fluoride | 01:28:48 |
| 14 | and a non-Fluoride and different flavors. | 01:28:51 |
| 15 | So I counted children's as one variety. | 01:28:58 |
| 16 | Q. Does the word natural appear on | 01:29:02 |
| 17 | the packaging or label of all toothpastes | 01:29:08 |
| 18 | in all 12 to 15 categories? | 01:29:15 |
| 19 | A. Yes. | 01:29:18 |
| 20 | Q. On all flavors? | 01:29:18 |
| 21 | A. Yes. | 01:29:20 |
| 22 | Q. Including children's products? | 01:29:20 |
| 23 | A. Yes. | 01:29:23 |
| 24 | Q. Fluoride and non-Fluoride? | 01:29:24 |
| 25 | A. Yes. | 01:29:26 |

Page 59

| | | |
|---|---|---|
| 1 | Q.    Is there any toothpaste that | 01:29:27 |
| 2 | Tom's sells that does not contain a label | 01:29:29 |
| 3 | or a package with the word natural? | 01:29:33 |
| 4 | A.    No, all of them do. | 01:29:36 |
| 5 | Q.    Do you know the names of the 12 | 01:29:43 |
| 6 | to 15 categories off the top of your head | 01:29:46 |
| 7 | or would you prefer -- | 01:29:51 |
| 8 | A.    Can I borrow a pen and a paper | 01:29:53 |
| 9 | and I can try to write it down? | 01:29:55 |
| 10 | Q.    We'll get you some later. | 01:29:55 |
| 11 | A.    Okay. | 01:29:58 |
| 12 | Q.    Would you turn to Page 7 of | 01:29:58 |
| 13 | Exhibit 2, please. | 01:30:08 |
| 14 | A.    Yes. | 01:30:10 |
| 15 | Q.    Are you there? | 01:30:10 |
| 16 | A.    Yes. | 01:30:14 |
| 17 | Q.    Do you see the four images that | 01:30:15 |
| 18 | appear on Page 7? | 01:30:18 |
| 19 | A.    Yes. | 01:30:19 |
| 20 | Q.    What are those? | 01:30:20 |
| 21 | A.    They are deodorants and, three | 01:30:21 |
| 22 | deodorants and one antiperspirant.  No, | 01:30:25 |
| 23 | two antiperspirants and two deodorants. | 01:30:30 |
| 24 | Q.    Do you see the red circles that | 01:30:35 |
| 25 | appear on Page 7? | 01:30:37 |

Page 60

```
 1    just want to clarify which ones are          01:36:31

 2    antiperspirants and within ones are          01:36:33

 3    considered deodorants.  The top left and     01:36:36

 4    the bottom right images are the              01:36:38

 5    antiperspirants?                             01:36:40

 6         A.    Correct.                          01:36:41

 7         Q.    And the top right and the bottom  01:36:41

 8    left would be considered deodorants?         01:36:44

 9         A.    Correct.                          01:36:48

10         Q.    And in the deodorant category,    01:36:48

11    do all of the labels and packaging contain   01:36:52

12    the word natural?                            01:36:55

13         A.    Deodorants, yes.                  01:36:57

14         Q.    How many different deodorant      01:37:01

15    varieties are there?                         01:37:05

16         A.    There are two tween deodorants    01:37:07

17    which are the Wicket Cool, one for boys,     01:37:24

18    one for girls.  And then there are about     01:37:30

19    13 to 14 adults, well, deodorants.           01:37:36

20              And in this qualification, I'm     01:37:46

21    counting each scent, each fragrance in       01:37:50

22    that 12, in that 14.                         01:37:57

23         Q.    Each as a separate?               01:37:57

24         A.    As a separate, so all the         01:37:58

25    different scents.                            01:38:01
```

Page 65