**United States District Court**
**District of Massachusetts**

```
_____
                                 )
Angela Munsell, individually and )
on behalf of all others          )
similarly situated,              )
                                 )
          Plaintiff,             )
                                 )
               v.                )     Civil Action No.
                                 )     19-12512-NMG
Colgate-Palmolive Co. and        )
Tom's Of Maine, Inc.,            )
                                 )
          Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative class action involves claims of unfair and deceptive practices in violation of the consumer protection laws of Massachusetts and Rhode Island by Angela Munsell ("plaintiff" or "Munsell") on behalf of herself and a class of similarly situated individuals against Colgate Palmolive Co. ("Colgate") and its subsidiary, Tom's of Maine ("Toms", collectively with Colgate, "defendants").

Pending before the Court is the motion of defendants to dismiss the complaint.

I.   **Background**

  **A. The Parties**

    Defendant Colgate is a Delaware corporation with its principal place of business in New York.  Colgate manufactures and sells various oral, personal and home care products, such as toothpaste and deodorant, throughout the United States.

    In 2006, Colgate conducted an all cash acquisition of an 84% stake in defendant Tom's for approximately $100 million. Tom's was founded 1970 and maintains its principal place of business in Maine.  Tom's purported mission is to help consumers live a more environmentally friendly and sustainable life by offering alternatives to oral and personal care products using only naturally sourced and naturally derived ingredients.  Tom's submits that it chooses product ingredients by consulting its "Stewardship Model", which contains certain standards for natural and sustainable ingredients.

    Munsell, the putative class representative and named plaintiff, has been a resident of Pawtucket, Rhode Island since the spring of 2016.  Prior to that, Munsell lived in Taunton, Massachusetts.  She alleges that she has regularly purchased Tom's "natural" toothpaste and deodorant products since 2015.

**B.  The Market for Natural Personal Care Products**

Plaintiff alleges that Tom's, seeking to capitalize on the growing market for personal care products derived from nature, has misled consumers into purchasing its products at a premium by labelling them as "natural".

The word "natural" is prominently displayed on the front panel of the packaging of Tom's toothpaste and deodorant/antiperspirant products ("the Products").  On another panel of each box, Tom's includes a link to its website and invites consumers to navigate online to further investigate what makes Tom's products "natural".  The packaging also includes a section labeled "what's inside matters" which refers consumers to Tom's Stewardship Model as a description of Tom's definition of what it considers natural and sustainable.  Tom's also provides a description of what it believes makes a product "natural and good" on the packaging of the Products.

**C.  Previous Settlement in <u>Gay</u> v. <u>Tom's</u>**

In 2014, a separate class of consumers brought a similar lawsuit challenging Tom's use of the word "natural" on certain "Covered Products" which includes the Products at issue in this case. <u>See</u> <u>Gay</u> v. <u>Tom's</u>, No. 0:14-cv-60604-KMM (S.D. Fla. 2014). The following year, the parties entered into a Settlement

Agreement ("the 2015 Settlement") which authorized Tom's to continue to use the word "natural" to market and describe the Covered Products as long as Tom's provided additional information on its packaging and website regarding its standards for natural, sustainable and responsible sourcing of ingredients.

The 2015 Settlement certified a settlement class of consumers who purchased at least one Covered Product between March, 2009, and September, 2015.  Members of the settlement class who failed to exclude themselves are deemed to have released all claims against Tom's relating to Tom's use of the word "natural" to advertise and sell the Covered Products.

## D. Plaintiff's Allegations

Plaintiff contends that, since the end of 2015, she has regularly purchased Tom's Products to satisfy her desire to utilize personal care products derived from nature and that are environmentally friendly.  Plaintiff alleges that she was misled into doing so because, despite Tom's claim of using only "natural" and sustainable ingredients, the Products each contain artificial, synthetic and/or chemically processed ingredients, including xylitol, sodium lauryl, glycerin, xantham gum, sorbitol, glycerin, ascorbic acid and aluminum chlorohydrate.

Munsell submits that consumers, such as herself, whose purchasing decisions are driven by a desire to maintain a natural lifestyle, have been and continue to be misled into purchasing the Products at a premium by virtue of Tom's misuse of the word "natural" which is belied by the inclusion of non-natural ingredients.

Plaintiff brings this action pursuant to Mass. Gen. Laws c. 93A and R.I. Gen. Laws § 6-13.1-1 on behalf of herself and two classes of similarly situated individuals against Tom's and Colgate for unfair and deceptive practices.

### E. The Proposed Classes

Plaintiff proposes two classes of consumers.  The first, "the Massachusetts Class", consists of

> All persons who have purchased Tom's of Maine toothpaste or deodorant Products in Massachusetts that were labeled "natural" yet contained artificial, synthetic and/or chemically processed ingredients between December 5, 2015 and the present.

The second, "the Rhode Island Class", consists of

> All persons who have purchased Tom's of Maine toothpaste or deodorant Products in Rhode Island that were labeled "natural" yet contained artificial, synthetic and/or highly chemically processed ingredients between December 5, 2015 and the present.

II.  **Motions to Dismiss**

    A.   **Legal Standard**

        1.  **Fed. R. Civ. P. 12(b)(1)**

In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If the defendant mounts a "sufficiency challenge", the court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. Id.  The court has "broad authority" in conducting the inquiry and can, in its discretion, consider extrinsic evidence in determining its own jurisdiction. Id. at 363-64.

### 2. Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the Court will decide a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009). As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must demonstrate that the exercise of jurisdiction 1) is permitted by

the applicable state long-arm statute, and 2) coheres with the
Due Process Clause of the Fourteenth Amendment of the United
States Constitution by showing that each defendant has "minimum
contacts" with Massachusetts. Daynard v. Ness, Motley, Loadholt,
Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

The Court's jurisdiction may be either "specific" or
"general." United States v. Swiss Am. Bank, 274 F.3d 610, 618
(1st Cir. 2001).  Specific jurisdiction requires a "demonstrable
nexus" between the claims of the plaintiff and the defendant's
contacts in the forum state. Id.  A plaintiff must make an
"affirmative showing" that 1) the litigation relates to or
arises out of the defendant's contacts with the forum state;
2) the defendant purposefully availed itself of the privilege of
conducting business in the forum state; and 3) jurisdiction over
the defendant is reasonable under the circumstances. Sawtelle v.
Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).  General
jurisdiction, on the other hand, exists when the defendant has
engaged in "continuous and systematic activity, unrelated to the
suit, in the forum state." Swiss Am. Bank, 274 F. 3d at 618.

Defendant challenges this Court's exercise of personal
jurisdiction with respect to the Due Process Clause, not the
long-arm statutes of either Massachusetts or Rhode Island.

### 3.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of

action. Id.  Accordingly, a complaint does not state a claim of
relief where the well-pled facts fail to warrant an inference of
any more than the mere possibility of misconduct. Id. at 1950.

**B.  Application**

Plaintiff claims that defendants engaged in unfair and
deceptive acts in violation of the state consumer protection
laws of Massachusetts and Rhode Island.  Defendant moves to
dismiss the complaint on the following grounds: (1) no
reasonable consumer would be misled or deceived by Tom's use of
the word "natural"; (2) plaintiff fails to plead her
misrepresentation claim with the requisite particularity;
(3) plaintiff lacks standing to bring claims or represent
purchasers of products that she herself did not purchase;
(4) this Court lacks personal jurisdiction over claims brought
on behalf of Rhode Island residents; and (5) plaintiff fails to
allege that Colgate engaged in any misconduct.

**1.  Merits of Chapter 93A Claim**

Plaintiff claims that Tom's use of the word "natural" on
the packaging of the Products is deceptive and therefore
violates Mass. Gen. Laws c. 93A ("Chapter 93A).  Pursuant to
Chapter 93A, a statement is deceptive

> when it has the capacity to mislead consumers, acting
> reasonably under the circumstances, to act differently
> from the way they otherwise would have acted (*i.e.*, to
> entice a reasonable consumer to purchase the product).

Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 488 (Mass.
2004).

Defendants contend that dismissal is warranted pursuant to
Fed. R. Civ. P. 12(b)(6) because no consumer acting reasonably
under the circumstances would find that Tom's use of the word
"natural" is deceptive when viewed in the context of the
packaging of the Products and Tom's online disclosures.
Plaintiff responds that the Court may not consider the
photographs of packaging or information provided on Tom's
website at the motion to dismiss stage because such information
is unauthenticated and otherwise outside the bounds of the
Complaint.  Plaintiff further submits that regardless of whether
the Court takes such information into account, she has
sufficiently pled facts that, if accepted as true, make it
plausible that Tom's conduct could have mislead a reasonable
consumer.

As a preliminary matter, the issue of whether to consider
the complete packaging of Tom's Products and information
provided by Tom's online is moot because the Court concludes
that, notwithstanding such information, plaintiff has met the

- 11 -

threshold of alleging a Chapter 93A violation sufficient to
survive a motion to dismiss.

At the motion to dismiss stage, the Court need only
determine whether the allegations in the complaint

> make it plausible that, on a full factual record, a
> factfinder could reasonably regard the label as having
> the capacity to mislead.

Dumont v. Reily Foods Co., 934 F.3d 35, 40 (1st Cir. 2019).

In Dumont, the First Circuit Court of Appeals considered
whether a plaintiff's claim that a coffee creamer was
misleadingly labeled as "Hazelnut" despite not actually
containing hazelnuts survived a motion to dismiss. Id. at 40-41.
The First Circuit held that, drawing all reasonable inferences
in plaintiff's favor, plaintiff stated a claim. Id. at 40.  In
doing so, it rejected defendant's argument that a reasonable
consumer would not be misled because a complete list of
ingredients excluding hazelnuts was provided on the back of the
product packaging. Id. at 41.  The First Circuit explained that,
on the one hand

> [o]ne might presume that a reasonable consumer who
> . . . cared whether the coffee she intended to
> purchase contained real hazelnut would check the list
> of ingredients. On the other hand, perhaps a
> reasonable consumer would find in the product name
> sufficient assurance so as to see no need to search
> the fine print on the back of the package . . . .

Id. at 40.  On balance, the Court of Appeals held that, although it was a close call, the factual question of whether a reasonable consumer could have been misled was better left to the factfinder on a full record. Id. at 41.  Several courts have similarly held. See, e.g., Branca v. Bai Brands, LLC, No.: 3:18-cv-00757-BEN-KSC, 2019 WL 1082562, *2-3 (S.D. Cal. Mar. 7, 2019); York v. Andalou Naturals, Inc., No. 16-CV-894-SMY-DGW, 2016 WL 7157555, at *6 (S.D. Ill. Dec. 8, 2016); Paulino v. Conopco, Inc., No. 14-CV-5145 (JG)(RML), 2015 WL 4895234, *7-8 (E.D.N.Y. Aug. 17, 2015).

Tom's argument that it values transparency and provides sufficient information to consumers to contextualize its use of the word "natural" is compelling and may yet prevail at the summary judgment phase.  But the question of whether a reasonable consumer could be expected to take investigative steps to educate himself or herself rather than rely on the prominent display of the word "natural" on the front of the package is, at this stage, a factual question to be addressed on a full record by the factfinder.

Accordingly, drawing all reasonable inferences in plaintiff's favor, as the Court must for the purpose of a motion

to dismiss, plaintiff has alleged sufficient facts that, taken as true, state a claim for violation of Chapter 93A.

Defendants also move to dismiss plaintiff's Rhode Island consumer protection claim for failure to state a claim but offer no additional reasoning in support.  Consequently, this Court will deny defendants' motion with respect to claims pursuant to the Rhode Island consumer protection statute for the same reasons addressed above.

### 2. Particularity Requirement of Chapter 93A

Defendants contend that plaintiff's Chapter 93A claim fails to meet the particularity requirement of Fed. R. Civ. P. 9(b), which requires "a party [to] state with particularity, the circumstances constituting fraud or mistake".  The "heightened pleading requirement" of Fed. R. Civ. P. 9(b) applies to claims of misrepresentation made pursuant to Chapter 93A. Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017).  To satisfy Fed. R. Civ. P. 9(b), a plaintiff must allege "the who, what, where, and when of the allegedly [misleading] representation." Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)) (alteration in original) (internal quotations omitted).

- 14 -

Defendants contend that plaintiff fails to meet that heightened pleading requirement because her allegations are "vague" and "general in nature".  Specifically, defendants note the failure of plaintiff to identify the kind of Tom's deodorant that she purchased or the dates and locations of her purchases.

In so arguing, defendant misunderstands that the "specificity requirement extends only to the particulars of the allegedly misleading statement itself," Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004), not to "the circumstances of the plaintiff's conduct in reliance" on that statement. O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 462 (D. Mass. 2018).

Although plaintiff does not describe each kind of Tom's product she purchased or attach particular dates to her purchases, she does contend that she was misled into purchasing Tom's Products advertised as "natural" in Massachusetts and Rhode Island regularly since December 5, 2015.  The "who" is defendants Tom's and Colgate.  The "what" is the allegedly misleading "natural" claim on the packaging of the Products which led plaintiff to purchase the Products at a premium despite the inclusion of synthetic, artificial and/or chemically processed ingredients.  The "where" is the packaging of the

Products and the "when" is the class period from December 5, 2015, to the present.  Such allegations are sufficient to meet the heightened standard required by Fed. R. Civ. P. 9(b).  Defendants' motion to dismiss for failure to plead with particularly will, therefore, be denied.

### 3.  Standing

Defendants next move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss Munsell's claims brought on behalf of unnamed members of the putative Massachusetts and Rhode Island classes on the grounds that plaintiff lacks standing to bring claims on behalf of purchasers of products that she herself did not purchase.  Specifically, defendants contend that plaintiff alleges only that she purchased Tom's Cinnamon Clove toothpaste, Sweet Mint whitening toothpaste and deodorant marketed as "natural".  The putative classes, however, include consumers who purchased any of Tom's toothpaste or deodorant products since 2015 in Massachusetts or Rhode Island that were labeled "natural" and contained artificial, synthetic and/or chemically processed ingredients.  Attached to plaintiff's complaint is a "non-exhaustive" list of those products, which includes 43 toothpastes, 16 deodorants and three anti-perspirants.

Standing is a prerequisite to bringing a claim in federal court.  Constitutional standing requires a plaintiff to establish that (1) she suffered an injury in fact (2) that was caused by the defendant's conduct and (3) can be redressed by a favorable decision from the federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiff bears the burden of plausibly alleging that these requirements are satisfied. Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

District courts are split as to whether a plaintiff has standing to assert claims on behalf of a putative class relating to products they themselves did not purchase but which are "substantially similar" to ones they did purchase. Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2013).  Some courts view the inquiry as one better suited for the class certification stage. See, e.g., In re Adobe Systems, Inc. Privacy Litigation, 66 F. Supp. 3d 1197, 1228-29 (N.D. Cal. 2014).  Others have held that, as a matter of law, plaintiffs do not have standing to bring claims for unpurchased products. See, e.g., Murray v. Sears, Roebuck and Co., No. C 09-5744 CW, 2014 WL 563264, at *9 (N.D. Cal. Feb. 12, 2014).  The majority view is, however, that a plaintiff has standing to assert claims on

behalf of putative class members relating to products that she did not purchase if plaintiff sufficiently alleges that the products and the alleged misrepresentations are "substantially similar" to those relating to the products plaintiff did purchase. <u>Vass</u> v. <u>Blue Diamond Growers</u>, No. 14-13610-IT, 2015 WL 9901715, at *6 (D. Mass. Aug. 11, 2015); <u>see</u> <u>also</u> <u>Davidson</u> v. <u>Kimberly-Clark Corporation</u>, No. C 14-1783 PJH, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014) (citing cases).

Defendants argue that, if the Court adopts the majority view, plaintiff cannot satisfy her burden because the 43 toothpastes, 16 deodorants and three anti-perspirants are too dissimilar.  Defendants submit that the toothpastes address different needs and indications (such as cavity protection, tooth sensitivity, whitening and anti-plaque), come in a variety of flavors (such as cinnamon clove, orange mango, fennel and spearmint) and are intended for different consumers (toddlers, children and adults).  Similarly, the deodorants and anti-perspirants are available in 11 different scents, two different forms and are intended for different consumer groups. Furthermore, the ingredient list for each of the toothpastes and deodorants/anti-perspirants vary from product to product.

Plaintiff responds that the differences emphasized by defendants do not render the product substantially dissimilar for purposes of this case.  Instead, she contends that each of the Products is labelled as "natural" but contains artificial, synthetic and/or chemically processed ingredients.

Applying the substantial similarity test employed by most courts, the allegations in the complaint describe sufficient similarity between the alleged misconduct relating to the products plaintiff did and did not purchase.  Plaintiff adverts to precisely the same phrase included on every Product packaging ("natural") and the inclusion of at least one ingredient that plaintiff alleges is not "natural". Defendant does not explain why the inclusion of additional ingredients or the variation of scents and flavors changes the inquiry of whether consumers were misled by the "natural" claim on the packaging.  The motion of defendants to dismiss claims relating to products plaintiff did not herself purchase will, therefore, be denied.

### 4.  Claims Brought on Behalf of Rhode Island Residents

Defendants next urge dismissal of plaintiff's claims asserted on behalf of the putative Rhode Island class members for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Defendants contend that the United States Supreme

Court decision in <u>Bristol-Myers Squibb Co.</u> v. <u>Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773 (2017) ("<u>BMS</u>") extends beyond mass tort actions to class actions and mandates that this Court dismiss the Rhode Island putative class members. This Court disagrees.

In <u>BMS</u>, approximately 600 plaintiffs, including both California residents and residents of other states, filed eight separate personal injury lawsuits in California state court against Bristol-Myers Squibb for damages caused by its blood thinner, Plavix. <u>Id.</u> at 1777.  The plaintiffs structured their lawsuit as a coordinated, mass tort action pursuant to Cal. Civ. Proc. Code § 404. <u>Id.</u>  Defendant argued that the California state court lacked personal jurisdiction over it with respect to the claims of the non-California plaintiffs who had not purchased, used or been injured by Plavix in California because those plaintiffs could not demonstrate that their claims arose out of defendant's contacts with California. <u>Id.</u> at 1783-84. Applying "settled principles of personal jurisdiction," the Supreme Court agreed. <u>Id.</u> at 1783.  The Court found that there was no connection between the forum and the non-residents' claims and, therefore, the exercise of personal jurisdiction over defendants with respect to those claims violated the Due

Process Clause of the Fourteenth Amendment. Id. at 1781.  The
Court did not, however,

> confront the question whether its opinion. . . would
> also apply to a class action in which a plaintiff
> injured in the forum State seeks to represent a
> nationwide class of plaintiffs, not all of whom were
> injured there.

Id. at 1789 n.4 (Sotomayor, J., dissenting).

   Notwithstanding Justice Sotomayor's disclaimer, defendants
contend that BMS applies equally in the class action context.
Recognizing that this Court already has rejected that argument
in Rosenberg v. LoanDepot.com, LLC, No. 19-10661-NMG, 2020 WL
409634, *12-13 (D. Mass. Jan. 24, 2020), defendants urge the
Court to reconsider its decision and "agree with the number of
other federal courts" which have applied BMS to class actions.
Of the several citations defendants proffer in support of that
argument, only two decisions from the same court address these
particular circumstances. See Am.'s Health & Res. Ctr. v.
Promologics, No. 16 C 9281, 2018 WL 3474444, at *2 (N.D. Ill.
July 19, 2018); Chavez v. Church & Dwight Co., No. 17 C 1948,
2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018).

   The remaining cited cases are inapplicable.  Two address
the application of BMS in the FLSA collective action context
which differs from a Rule 23 class action. See Chavira v. OS

Rest. Servs., LLC, No. 18-cv-10029-ADB, 2019 WL 4769101, at *6
(D. Mass Sept. 30, 2019); Roy v. FedEx Ground Package Sys.,
Inc., No. 3:17-cv-30116-KAR, 2018 WL2324092, at *9 (D. Mass. May
22, 2018).  The other cases address the application of BMS to
the named plaintiff in a putative class action where the claims
of that named plaintiff were deemed unrelated to the defendant's
activities in the forum state. See Plumber's Local Union No. 690
Health Plan v. Apotex Corp., No. 16-665, 2017 WL 3129147, at *9
(E.D. Pa. July 24, 2017); Spratley v. FCA US LLC, 3:17-CV-0062,
2017 WL 4023348, at *7-8 (N.D.N.Y. Sept. 12, 2017); In re Dental
Supplies Antitrust Litig., 16 Civ. 696 (BMC(GRB), 2017 WL
4217115, at *9 (E.D.N.Y. Sept. 20, 2017).  Here, defendants do
not challenge this Court's jurisdiction with respect to the
named plaintiff's Rhode Island claims; they challenge only the
Rhode Island claims of the unnamed members of the putative Rhode
Island Class.

Although the Court recognizes that two judges in the
Northern District of Illinois have applied BMS to unnamed
members of a class action, this Court finds more persuasive the
numerous other courts, including this one, that have held to the
contrary. See, e.g., Mussat v. IQVIA, Inc., 853 F.3d 441 (7th
Cir. 2020) (holding that BMS does not apply to nationwide class

actions filed in federal court under a federal statute);
Rosenberg v. LoanDepot.com LLC, No. 19-10661-NMG, 2020 WL
409634, *12-13 (D. Mass. Jan. 24, 2020) ("Given th[e] inherent
differences and the well-reasoned caselaw holding that
the BMS case does not apply in the class action context, this
Court similarly declines to extend the reach of
the BMS decision."); Fitzhenry-Russell v. Dr. Pepper Snapple
Group, Inc., No. 17-cv-00564 NC, 2017 WL 4224723, *3-*5 (N.D.
Cal. Sept. 22, 2017) ("[T]he Court is not persuaded to extend
Bristol-Myers to the class action context on these facts.");
Gress v. Freedom Mortg. Corp., 386 F. Supp. 3d 455, 464-65 (M.D.
Pa. 2019) ("[A] majority of the district courts who have faced
these questions have determined that Bristol-Myers Squibb does
not apply to class actions" (collecting cases)).

    As this Court and several others have noted, there are
distinct differences between the mass tort action in BMS and a
class action.  Significantly, in coordinated mass tort actions,
all plaintiffs are real parties in interest. Rosenberg, 2020 WL
409634, at *12-13.  In contrast, in a class action, the named
plaintiff "earn[s] the right to represent the interests of
absent class members" pursuant to the criteria set forth in Fed.
R. Civ. P. 23. Mussat, 853 F.3d at 447.  Indeed, absent class

action members are not considered full parties to the case for many purposes, including diversity jurisdiction and venue. Id.

Furthermore, a class action, unlike a mass tort action, must satisfy the additional due process requirements for class certification pursuant to Fed. R. Civ. P. 23.  The familiar requirements of numerosity, commonality, typicality, adequacy of representation, predominance and superiority, "supply due process safeguards not applicable in the mass tort context." Molock v. Whole Foods Market, Inc., 297 F. Supp. 3d 114, 126-27 (D.D.C. 2018).  In short, class actions simply "are different from many other types of aggregate litigation." Mussat, 853 F.3d at 446-47.

Given those differences and the well-reasoned caselaw declining to extend BMS to the class action context, this Court reaffirms its decision in Rosenberg and concludes that BMS does not apply to the Rhode Island claims of the unnamed members of the putative Rhode Island Class in these circumstances. Accordingly, defendants' motion to dismiss those claims will be denied.

### 5.  Claims Against Colgate

Defendants contend that all claims against Colgate should be dismissed because plaintiff fails to allege any wrongdoing by

Colgate or why the corporate veil should be pierced to hold
Colgate liable for the acts of its subsidiary, Tom's.

Massachusetts corporations are "ordinarily regarded as
separate and distinct entities" from their subsidiaries. Scott
v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1131 (Mass. 2008).  A
parent corporation may be held liable for the actions of its
subsidiary "only when compelling reasons justify disregarding
corporate structure and piercing the corporate veil." Lokosky v.
Acclarent, Inc., 270 F. Supp. 3d 526, 531 (D. Mass. 2017).  Two
circumstances justify veil piercing.  The first is when the
parent exercises

> pervasive control of the activities of the subsidiary
> and there is some fraudulent or injurious consequence
> of the intercorporate relationship.

My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748,
752 (Mass. 1968).  A court may also disregard corporate
formalities

> when there is a confused intermingling of activity of
> two or more corporations engaged in common enterprise
> with substantial disregard of the separate nature of
> the corporate entities, or serious ambiguity about the
> manner and capacity in which the various corporations
> and their respective representatives are acting.

Id.

Massachusetts courts employ twelve factors to guide their
veil-piercing analysis, including:

(1) common ownership; (2) pervasive control; (3)
confused intermingling of business assets; (4) thin
capitalization; (5) nonobservance of corporate
formalities; (6) absence of corporate records; (7) no
payment of dividends; (8) insolvency at the time of
the litigated transaction; (9) siphoning away of
corporation's funds by dominant shareholder; (10)
nonfunctioning of officers and directors; (11) use of
the corporation for transactions of the dominant
shareholders; and (12) use of the corporation in
promoting fraud.

Attorney Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass

2000) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.,

754 F.2d 10, 14-16 (1st Cir. 1985)).

Defendants contend that plaintiff is unable to rebut the

presumption of corporate separateness.  Although plaintiff must

satisfy her ultimate "burden of overcoming the presumption of

separateness by clear and convincing evidence," she need only

plead facts sufficient to state a claim for piercing the

corporate veil at the motion to dismiss stage. See Lokosky, 270

F. Supp. 3d at 531 (quoting Carballo-Rodriguez v. Clark

Equipment Co., 147 F. Supp. 2d 63, 65 (D.P.R. 2001)).

Plaintiff alleges that Colgate purchased a majority share

of Tom's stock for the specific purposes of (1) selling

"natural" products, (2) benefiting from Tom's dominance in the

natural product market and (3) working with Tom's to market and

sell products as "natural", despite the inclusion of non-natural

ingredients.  Such allegations are sufficient to state a claim

that Colgate acquired and uses Tom's to promote

misrepresentation through deceptive and misleading marketing

practices.  Accordingly, plaintiff has alleged sufficient

wrongdoing on the part of Colgate to overcome defendants' motion

to dismiss.

### ORDER

For the forgoing reasons, the motion of defendants to

dismiss the complaint (Docket No. 15) is **DENIED.**

**So ordered.**


  /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge


Dated May 20, 2020